## Evan *v.* Evan, Appellant.

*Divorce—Desertion—Separation by consent.*

In an action for a divorce on the grounds of desertion, it appeared that the respondent, who was about to have a child, left the libellant, with his consent, to make a visit to her mother in Germany. It further appeared that the respondent's delay in returning to America was due to her inability to locate the libellant and the intervening war. It also appeared that the libellant had been living with another woman and had a child by her.

Under such circumstances, the decree of the lower court granting the divorce will be reversed.

Argued March 9, 1926. Appeal No. 334, October T., 1925, by respondent, from decree of C. P. Northampton County, November T., 1923, No. 115, alias February T., 1924, No. 3, in the case of Daniel Evan v. Mary Szabo Evan. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Libel in divorce. Before McKEEN, J.

The facts are stated in the opinion of the Superior Court.

582    EVAN *v.* EVAN, Appellant.

Statement of Facts—Opinion of the Court.    [87 P.a. Superior Ct.

The case was referred to Adams Dodson, Esq., as Master, who recommended that a divorce be granted. On exceptions to the Master's report, the court dismissed the exceptions and granted a divorce.

*Error assigned* was the order of the court.

*E. J. Fox,* and with him *Israel Krohn,* and *J. W. Fox,* for appellant.

*R. C. Mauch,* for appellee.

OPINION BY TREXLER, J., April 19, 1926:

This is a suit in divorce. The libel charges desertion. The master and the court below thought that the libellant had proved his case, but we arrive at a different conclusion. The desertion is alleged to have taken place on the 22nd day of March, 1913. The libellant says that his wife, on that day, left him and went to Europe, that her leaving was against his wishes, and that notwithstanding his opposition, she left him. She stated that she was about to have a child and that she wanted to go home to her mother in Germany to give birth to the child. He accompanied her to New York and saw her get on the boat. Subsequently, he wrote to her to send him money and he would go to Europe.

One of his witnesses testifies that the husband told her, "Don't you go anywhere that there is trouble" and that there was some difficulty about the steamship ticket. It appears that the testimony of this witness that the wife was all ready to go and that the trouble originated later and that as she was ready, she intended to go whatever happened. The witness states that the wife said, "I am going, because I am all prepared to go." She wanted to go to her mother in view of the event which was shortly to happen. The witness stated that there had never been any fight in

the family and that the relations between the libellant and the respondent were amicable.

During the first year they exchanged letters and according to the testimony of one of the witnesses, the husband told her that his wife went home because he was not working and he could not take care of her here and that she was coming back when the baby grew up a little. Another witness testified that when the respondent left he told her that "When the baby is born she is coming back" and that the wife left some articles belonging to herself in a trunk.

The libellant called his sister who gave some testimony adverse to the respondent, claiming that she had a letter from her, which she did not produce, in which Mrs. Evan stated that she did not intend to come back to America, that her husband could live happily and go to balls and movies and could live the way he liked. This proved to be not a positive assertion that she was not coming back to him, but was put in the interrogative form, "Why should I come back to you?" This witness further testified that after Mrs. Evan came back from Europe, that she told her that she didn't care if her husband was alive or dead. The force of her testimony, however, is weakened by the fact that the witness testified that she had never written a letter to Mrs. Evan when she was in Europe, was very positive about it, and was afterward confronted with a letter which she admitted she had written.

It does not appear anywhere, by competent proof, that this husband made a positive demand upon his wife to come back to him in America. He moved from Trenton and took up his residence at various times in West Virginia, New York, and in New Brunswick, N. J. He did not correspond with his friends or relatives and did not correspond with his own parents for a period of ten years. There is evidence in the case that he was reported dead. Why he kept his whereabouts a

secret is not known, but there is suspicion that he did not wish his wife to know where he was. This conclusion is strengthened by the fact that he was living with another woman and had a child with her.

Her testimony is to the effect that they were poor. He earned about $1.45 a day, which was not enough to support both. When she evinced a desire to be with her mother during her confinement, he told her to go and come back after the child was born. He bought the steamship ticket out of money in a trunk to which they both had access.

We have come to the conclusion that when the wife left the husband, it was for a particular purpose which under the circumstances was reasonable. The impression left upon us after reading the testimony is that instead of this being a willful and malicious desertion, it was with his consent, both parties at that time, having in view the return of the wife after the child was born. The only objection he had was to the trouble which she might experience and perhaps the perils of the voyage. These were merely subjects of solicitation for her safety. Her delay in returning to America cannot be charged against her, when for a long period his whereabouts were unknown, and the war intervened. She, also, had difficulty in procuring an affidavit which she thought was necessary for her return to America. For some years, the libellant had been living with another woman, and had a child with her, and certainly she was not required to return to him during that time, Betzko v. Betzko, 81 Pa. Superior Ct. 231.

The decree of the lower court granting the divorce is reversed, the libel is dismissed and the libellant is directed to pay the costs.