# Litch v. Litch, Appellant.

*Divorce—Desertion—Excusable—Evidence—Refusal of divorce.*

A decree of divorce on the ground of desertion will be reversed, where it appears that the alleged desertion of the wife followed acts of adultery on the part of the libellant, which she did not condone and which justified her in leaving him.

In such a case, letters which were addressed to the libellant and which indicated adulterous conduct on his part, are admissible for the purpose of showing the justification for the separation.

Where it appears that the libellant requested the respondent to return to him, evidence is admissible, which shows or tends to show that the request was not made in good faith.

While acts of adultery committed by libellant, after the date of the alleged desertion cannot be urged as justification for the with-

Syllabus—Opinion of the Court.    [89 Pa. Superior Ct.

drawal by respondent from their habitation, evidence of such practices is admissible as tending to show a justification for persisting in the separation.

Argued April 15, 1926.   Appeal No. 29 , April T., 1926, by respondent, from judgment of C. P. Jefferson County, April T., 1922, No. 85, in the case of Thomas K. Litch v. Amelia V. Litch.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Reversed.

Libel in divorce on the ground of desertion.   Before CORBET, P. J.

The facts are stated in the opinion of the Superior Court.

The case was referred to J. U. Gillespie, Esq., as Master, who recommended that a divorce be granted.

On exceptions to the Master's report the court dismissed the exceptions and granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

*W. N. Conrad,* for appellant.

*S. C. Pugliese,* and with him *A. S. Scribner* and *Charles J. Margiotti,* for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1926:

This is an appeal by Amelia V. Litch from the decree of the Court of Common Pleas of Jefferson County, granting a divorce to her husband, Thomas K. Litch, upon the ground of her wilful and malicious desertion of him on December 21, 1914, persisted in for two years and upwards.

The libel in the present action was not filed until February 18, 1922.   The respondent promptly filed an answer denying wilful and malicious desertion without a reasonable cause and averring that she had been

forced to withdraw from their home by reason of the offering by libellant of such indignities to her person as to render her condition intolerable and her life burdensome, with a specification of the nature of the alleged indignities.

In addition the answer sets forth that libellant, at various times after their marriage and prior to the date of the alleged desertion, committed adultery with divers persons, specifying the names of three alleged paramours, and averring the commission of adultery with numerous other persons unnamed, and also averring that libellant on September 18, 1917, under the assumed name of Thomas E. Kimball, entered into a bigamous marriage with a woman by the name of Maurine Hendricks in the City of Albuquerque, New Mexico. The case was referred to a master, who took the testimony between the dates of March 31 and May 7, 1923.

On June 20, 1923, the respondent moved to amend her answer by adding thereto, as additional justification for her withdrawal, averments to the effect that libellant had been guilty of cruel and barbarous treatment, endangering her life, consisting of a continuous denial of the necessaries and comforts of life; had committed adultery with three additional women and with others unknown to respondent; and averring that libellant had wounded respondent's mental feelings, destroyed her peace of mind and made their home a gambling rendezvous. Said motion to amend contained additional averments to the effect that the separation had been with libellant's "consent, desire and designs," and that the action had not been brought "in sincerity and truth but for the mere purpose of being freed."

The court below made an order, permitting the answer to be amended as prayed for, with the qualification that the allegations therein contained were entire-

ly for the master in the first instance, and that the granting of the motion should not conclude anything in respect thereto.

The master filed a detailed and voluminous report, covering sixty-two printed pages of the record, in the course of which he excluded from his consideration, for reasons which will be considered later, practically all the testimony bearing upon the conduct of libellant subsequent to the date of the alleged desertion, and concluded with the recommendation that a divorce be granted libellant.

Numerous exceptions to the report of the master were filed on behalf of respondent and the court below, in a brief opinion, dismissed the exceptions, approved the report of the master and entered a decree in favor of libellant.

The master likewise excluded the offer of the respondent to show the manner of life and conduct of libellant subsequent to the period two years after the alleged desertion, including an offer to show that libellant had been guilty of adultery with one Maurine Hendricks and had been bigamously married to her in the City of Albuquerque, New Mexico, in September, 1917, and including an offer to show that during 1917 the libellant was the manager of a burlesque show and had in his company a woman, whom he registered as his wife at a hotel in Chicago and with whom he had committed adultery in Pittsburgh.

The opinion of the court, in effect, adopts all the findings of fact and conclusions of law submitted by the master.

The observation of GAWTHROP, J., in Giles v. Giles, 80 Pa. Superior Ct. 469, a case in which the issue was identical with the issue in the present case, is properly applicable to the opinion of the court below in this case. In the case cited it was said: "The court below dismissed the exceptions filed to the master's

report and confirmed his findings without any discussion of the evidence, of the conclusions of fact or of the application of the law to the facts as found. Of whatever drudgery the court below may relieve itself in a suit for divorce by appointing an examiner, neither it nor we can escape the burden of a careful consideration of the evidence in order to ascertain whether in truth it does establish the statutory grounds for a divorce. The rule generally applicable to proceedings before a master or an auditor, that a finding of fact will not be disturbed, except for manifest error, has not been adopted in proceedings in divorce. It is our duty, on appeal from a decree of divorce, except where there has been an issue and jury trial, to review the testimony and adjudge whether it sustains the complaint of the libellant: Middleton v. Middleton, 187 Pa. 612; Howe v. Howe, 16 Pa. Superior Ct. 193; Rishel v. Rishel, 24 Pa. Superior Ct. 303.''

It is true that the learned judge of the court below states in this case that he has read and carefully considered all the evidence, but we do not have any expression of his independent judgment.

Motions to quash this appeal were made for alleged violations of various rules of this court, relative to the preparation and printing of briefs, and for failure to file assignments of error in this court, in accordance with Rule 60, and for failure to quote verbatim in the assignment of error relating thereto the final decree, as required by Rules 29 and 30.

In view of the importance and character of the questions involved in this appeal, and, in order that the appellant might not be prejudiced through the failure of her counsel to comply with technicalities of procedure, we granted her counsel leave, at bar, to file assignments of error, including an assignment in proper form to the final decree of the court below.

Stripped of all extraneous matters and all technicalities, the real question involved upon this appeal is whether the libellant is an "innocent and injured person," whose wife wilfully and maliciously deserted him, without a reasonable cause, and maliciously persisted in such desertion for a period of two years, or whether the respondent was legally justified in withdrawing from their habitation and in declining to resume marital relations with the libellant.

In Ingersoll v. Ingersoll, 49 Pa. 251, the desertion which constitutes a ground for divorce is defined as follows: "Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other." This language is quoted by RICE, P. J., with approval in Neagley v. Neagley, 59 Pa. Superior Ct. 565, 571, and it is there stated that this clear and concise definition has been approved in many later cases and has never been questioned.

The parties were married July 13, 1910, and have one child, a daughter. They went to housekeeping in a rented house in Brookville, Pa., the town in which both resided prior to their marriage. They occupied several homes and on December 21, 1914, were living in a rented house on Jefferson Street.

On that date the respondent withdrew from their home and, taking her daughter with her, went to the home of her parents in Brookville and since that date has resided with her parents and sisters and has been supported by them, with the exception of such sums of money hereinafter referred to as were paid her in compliance with various orders of court.

The respondent took with her such portion of the furniture as had been given to her as wedding presents. Libellant continued to occupy the residence at inter-

vals for several weeks; then sold the remainder of the furniture and took up his residence with his aunt, Mrs. Blanche J. Litch, the widow of his uncle, at whose residence he had maintained a room and kept a portion of his clothing and personal belongings for many years. Since that time the libellant has never made any effort to provide a home of any kind in any place for his wife and daughter.

The testimony in this case reveals the libellant as a man who never followed any reputable occupation or made any honest effort to support his family or himself. It shows him to have been a gambler, spendthrift, loafer and libertine, who sought companionship with disreputable male companions and lewd women, and who was without credit or standing in the community. That he shamefully neglected his wife and daughter and absented himself from home a large part of the time and subjected his wife to embarrassment and inconvenience through his neglect to maintain his credit with merchants and to annoyance and humiliation through bringing male companions to his home for gambling debauches, continuing frequently until the early hours of the morning, is beyond question; but we agree with the conclusions of the master that under all the evidence, viewed in the light of the decisions of our courts, the conduct of libellant did not amount to such cruel and barbarous treatment endangering respondent's life, or such indignities to her person rendering her condition intolerable and life burdensome as would legally force her withdrawal from their habitation.

The main justification assigned by the respondent for her withdrawal was the finding by her, shortly before that time, in a suit-case belonging to libellant, of a number of letters addressed to him by women, the contents of which, as she contended, indicated that he was engaging in illicit relations with them, and the bringing to and maintaining at the American

Hotel in Brookville by libellant of a certain woman in order that he might indulge in adulterous practices with her.

In reply to the question, ''What was the immediate cause of that withdrawal?'' the respondent answered, ''Because on Sunday afternoon the week before I left he told me that this girl was here at the hotel, and that they had been at the hotel together, and the people at the hotel had tried to catch him, and that he had jumped out of the window and down over the banister and got away. And he wanted me to help him out. He said if I would, he would buy me a nice set of furs. And I said, 'If there is nothing the matter and if it isn't true what they say, why do you want me to help you out?' Well, he said he wanted me to meet the girl, and he took me up to the hotel, and at the bottom of the steps, or the middle of them, we met Ed Hopkins [the manager] and he talked to us, and he said it wouldn't be right for me to meet that girl. He said it might be all right for the fellows to talk to her, but he told Tom it wouldn't be right for his wife to meet her.''

It would serve no good purpose to discuss in detail the evidence corroborative of the fact that the libellant brought this girl to Brookville for immoral purposes. As in numerous other instances the evidence is contradictory and disputed and the testimony of the libellant throughout the case is unusually evasive and utterly lacking in frankness. The libellant admitted that he met this girl during the year 1913 while she was employed in a department store in Pittsburgh and the only inference to be drawn from the testimony is that she came to Brookville at his instance. During the time she was living at the American Hotel, he had a room there on a number of occasions and was there the night before the respondent withdrew from their home. We cannot agree with

the master that the evidence does not justify the conclusion that libellant committed adultery with this woman.

With reference to the letters found by respondent in libellant's suit-case shortly before her withdrawal, it is to be noted that he admitted that he had assumed the alias of "L. K. Thomas," and rented a private box in that name at the post-office. The evidence shows that the "Nancy" referred to in the letters was a girl known to both libellant and respondent at Brookville and with whom respondent was well acquainted before she went away to school.

In 1911 respondent found in a waste paper basket the torn fragments of a letter addressed to this girl by libellant, in which he, among other things, had written: "Dear Kid: You have no idea how mean I am treated by my wife and her people and I hope some day to have you for my own for I love you dearly and I hope you love me. Do you?" and after stating that he would be in Elkins on a certain evening had directed her to come to the hotel and inquire for him as she had done before under the name of L. K. Thomas.

This letter was found by respondent in 1911 and it is contended by counsel for libellant that any offenses committed by libellant with this girl were condoned. Respondent, however, testified positively that although she and libellant had lived in the same house and to all outward appearances acted as husband and wife until December 21, 1914, she had had no marital intercourse with him after the finding of the torn letter. The other letters, although dated prior to her withdrawal, were not found by respondent until shortly before her departure.

Among the letters found in the suit-case were six written to libellant by the said "Nancy" indicating that libellant and this girl were arranging for meetings

for illicit purposes and that she had made particular efforts to conceal their relations from the respondent.

There was also found in the suit-case a letter addressed by the libellant, under his alias of L. K. Thomas, to a woman at Buffalo, N. Y., under date of January 28, 1912, which letter had been returned to the writer at Brookville as undelivered. In this letter libellant, after remonstrating with this woman about having gone away with another man, said: ''Don't you care anything for me? You know you said that you intended to leave him and go with me and I thought everything was all right. You know that I love you and I would do anything for you that you would ask me to do and would make you happy. You and I have had a good time together for the short time we have known each other and for God's sake do not throw me down now,'' etc.

In the same place respondent also found two letters and several postal-cards addressed to libellant by a woman signing herself as Della. These letters and cards were mailed from Pittsburgh during March and April, 1912. A reading of these letters indicates beyond any reasonable doubt that the writer was an inmate of a house of prostitution in Pittsburgh and that libellant had visited her on several occasions.

We have not attempted to review all the evidence bearing upon the conduct of libellant prior to the withdrawal of respondent. There was testimony showing that prior to the date of separation libellant had been an habitual and frequent visitor in company with other men of houses of prostitution in Buffalo and Pittsburgh, and that in 1911 or 1912 libellant had some difficulty with a certain druggist in Buffalo over the furnishing by libellant of a flat for an inmate of one of these houses, upon whom the druggist asserted a superior claim.

The master excluded from his consideration the

above mentioned letters found in the suit-case of libellant upon his interpretation of Matchin v. Matchin, 6 Pa. 332. In that case the paramour of the defendant had made a formal confession, as had also the defendant. In speaking of the conclusive character of the evidence in that case the Supreme Court said that there was plenary proof, ''to say nothing of the confession of her accomplice which, not having been communicated to her and confirmed by her was not evidence to affect her,'' and added that there was enough for the purpose of inculpation without the confession of either.

It is to be noted that the issue here differs from the issue in the case cited. The question here is whether the finding of these letters, together with many other circumstances indicative of the adulterous conduct of libellant, amounted to a reasonable cause for the withdrawal of respondent, which is charged in the libel to have been malicious and without any reasonable cause. We are of opinion that the letters were admissible for the purpose of refuting the charges contained in the libel and in connection with the other proofs in the case.

Under all the evidence as we read it, we cannot agree with the master that respondent did not have a legal justification for withdrawing from the habitation of libellant. On the contrary we feel that the evidence in this case, considered in its entirety, demonstrates that the libellant practically ever since his marriage has had no regard whatever for his marriage vows or marital obligations and has engaged in such a course of adulterous conduct with divers women, culminating in the bringing of one of his paramours to Brookville and asking his wife to receive her into their home, as to furnish legal justification to the respondent for withdrawing with their child from the habitation of libellant.

Another issue arising on this appeal is whether the respondent wilfully and maliciously persisted in the alleged desertion for a period of two years. In his disposition of the case the master decided, upon the authority of Ristine v. Ristine, 4 Rawle 459, that he should "eliminate all evidence, whether written or oral, of conduct of the libellant subsequent to December 21, 1914," the date of the separation. The evidence thus excluded from consideration consisted, inter alia, of four letters, written by libellant in 1917 to the above mentioned member of the burlesque company in which he remonstrates with her for associating with someone by the name of Fred and tells her that he is in a position to give her a good home and everything she might want to make her happy and that he wants her for his wife, and enclosed small amounts of money.

In one of the letters he said, "I know we both have given up lots of things for each other and I can hardly wait until I am free so I can call you my own," etc., and promises to come to see her as soon as he can.

The evidence excluded under this ruling also indicates adulterous practices by the libellant in Akron, Ohio, and Kalamazoo, Mich. The testimony originally received and afterwards excluded from consideration, and the evidence offered by respondent and excluded, all tended to show that the manner of life of the libellant since the separation had been such that no woman of any refinement could be expected to resume marital relations with him.

Again, the evidence received and considered by the master showed that the libellant had stripped himself of a considerable inheritance from his uncle, alleged to exceed one hundred thousand dollars in value, by turning over to his aunt above mentioned, Mrs. J. Blanche Litch, in the fall of 1919, securities and stocks of very considerable value; that the aunt placed the same in trust with the Union Banking and Trust Com-

pany of DuBois, Pa., to pay her, or upon her written order, the net income therefrom during her life and, upon her death, to pay out of the income $100 per month to the guardian of the child, or children, of libellant, born in lawful wedlock, and the remainder of the income to the libellant during his life and, upon his death, to pay the corpus and accrued income to his lineal descendant or descendants, etc.

No provision was made for the respondent and the only money she has received for the support of herself and their daughter since her separation from the libellant has been approximately $2,000, obtained through constant and repeated legal proceedings to secure such support.

Since June 1, 1921, respondent has been receiving under a decree of court $125 per month for her daughter and herself.

The testimony of libellant with respect to the transfer of his inheritance to his aunt is as follows: "Q. So you completely beggared yourself? A. I gave everything I had to her. Q. And you haven't a penny in the world now? A. No, sir." Libellant seems to be entirely dependent upon such sums as he can induce his aunt to dole out to him from time to time.

Although the master declined to consider the testimony showing the kind of a life libellant has lived since the date of the separation, considerable stress was placed by him upon the fact that libellant stated at one of the last hearings that he is "now willing to live with the respondent," and testified that a year and a half or two years before the time at which he was testifying he had written a letter to respondent offering to live with her. The receipt of the letter was admitted by respondent and she testified that she had not given the matter of returning to libellant any serious consideration. The master found specifically as a fact

that the libellant "was willing to live with respondent and that his offer was made in good faith."

It is difficult to understand how the good faith of libellant's offer to resume marital relations with respondent can properly be tested if the evidence showing his bigamous marriage to one woman and his expressed desire to marry another is to be excluded along with the evidence showing that there had been no reformation in his licentious habits.

It is of course true that acts of adultery committed by libellant after the date of the alleged desertion could not be urged as justification for the withdrawal by respondent from their habitation but, in view of the contention of the libellant that he requested respondent to return to him and was willing to live with her, we are of opinion that the good faith of these offers is necessarily involved and that the manner of life and the conditions under which libellant was living when the offers were made are of significance and that any evidence showing or tending to show that these offers were not made in good faith was admissible.

It is equally true that in Ristine v. Ristine, supra, our Supreme Court held that, where the ground for a divorce is desertion, proof of the adultery of the libellant, committed after the desertion has taken place, is not a bar to the granting of the divorce because it is only in cases where the ground for divorce is adultery that the legislature has expressly provided that proof of adultery by the libellant shall be a good defense and a perpetual bar against the action. Sec. 7, Act Mar. 13, 1815; 6 Sm. L. 286.

In the course of the opinion it is stated that "The legislature by confining this defense to the single case of a divorce sued for on account of adultery, alleged to have been committed by the defendant, may fairly be considered as having intended to make it the only case in which such a defense should be available, unless

as a good excuse or 'reasonable cause' for the defend-
ant's deserting and leaving the plaintiff.''

If adulterous practices by libellant be deemed a rea-
sonable cause for the withdrawal by respondent, and
they are expressly so recognized in the opinion cited,
it is difficult to see why such practices should not con-
stitute a reasonable cause for persisting in such with-
drawal. We do not understand that this evidence was
offered as a bar to this action but rather as a justifi-
cation for persisting in the separation.

There has been frequent and almost continuous liti-
gation between the parties ever since the date of the
separation consisting, inter alia, of the filing of sev-
eral libels for a divorce from bed and board by the re-
spondent against the libellant and of an action by li-
bellant against respondent in Jefferson County for an
absolute divorce, which suit was instituted in 1921 and
discontinued in February, 1922.

Various proceedings, having for their purpose the
obtaining of decrees for the support of respondent and
her child, were instituted in Jefferson County. The
testimony shows that the libellant made frequent and
prolonged trips to California, and, in addition to the
above mentioned proceedings, instituted in California
in March, 1920, an action for divorce from the re-
spondent, in which he set forth under oath, inter alia,
that he then was and had been ''for more than one
year last past a resident of the County of Los Ange-
les, State of California.'' None of these divorce ac-
tions was prosecuted to final judgment.

Another contention advanced by respondent at the
hearing of this case and urged in this court related to
the question whether the libellant had been a resident
of Pennsylvania ''for more than one whole year imme-
diately preceding the presentation'' of the libel in the
present action, as averred therein. It was shown that
he registered for military service in California and in-

stituted the above mentioned proceedings for divorce as a resident of California, and there are other items of evidence tending to negative his present statement that he has always been a resident of Pennsylvania.

In view of the conclusions we have reached upon the main branch of the case, it is unnecessary to pass upon this question of residence and we therefore express no opinion upon it.

The decree of the court below granting the appellee a divorce and awarding costs to him is reversed and the court below is directed to enter an order dismissing the libel at the cost of the appellee.