Gilham, Appellant, *v.* Gilham.

Argued September 29, 1954. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (ROSS, J., absent).

*Carl A. Niehoff,* for appellant.

*William A. Wyatt,* with him *Frank X. York* and *Forrest J. Mervine,* for appellee.

OPINION BY HIRT, J., January 14, 1955:

Although the master recommended a divorce on the ground of adultery in this case, the court sustained exceptions to his report and dismissed the complaint. A consideration of the entire record convinces us that the case was properly decided. The order will be affirmed.

The parties were married in August 1941 and they lived together until November 26, 1942 in the Borough of Lehighton, when libellant was inducted into the armed forces. After a training period in a number of military camps, he was sent overseas and he spent a total of fifteen months of active service in North Africa and in Italy. During the period respondent lived with her parents in East Stroudsburg. After his discharge from the service libellant returned to Lehighton on November 30, 1945. Because of a housing shortage he was unable to set up a separate home and respondent remained in the home of her parents. The parties did resume marital relations however during weekends and respondent lived with her husband continuously, at the home of his parents for several weeks early in 1946. Libellant testified that on June 6, 1946 while taking his wife to her parents home in an automobile he became suspicious because of her attitude toward him

and he then insisted that she tell him the reason for what he interpreted as a disturbed conscience. In response, according to his testimony, she said that she had been out with one Carl Hamill at least once a month from July 1944 until just before libellant's return in November 1945. According to his testimony when she stated further that she was afraid that she had contracted a venereal disease, libellant drove back to Lehighton with his wife in the car and reported her confession to his parents, whereupon they all went to the office of Dr. Roger R. Rupp in Lehighton for the purpose of an examination of the defendant for venereal infection. Dr. Rupp testified that in his office he asked her: "Is there any reason for you to be examined . . . Were you out with anybody? And she said 'Yes.'" That was the extent of the questioning. A nurse in attendance testified that the above admission was made to Dr. Rupp in her presence and in the presence of libellant's parents. The result of the examination was negative.

Under the circumstances, the admission made to Dr. Rupp was confidential and privileged by the Act of June 7, 1907, P.L. 462, 28 PS §328, and since the nurse was in attendance in her professional capacity, the same principle closed her mouth. Cf. 58 Am. Jur., Witnesses, §405. Accordingly we are bound to disregard their testimony as to the above admission. However the conversation was overheard by libellant's parents and their testimony was competent and credible evidence of the admission which the defendant then made. Third persons may testify to communications, overheard by them, however privileged as to the parties to the conversation. 58 Am. Jur., Witnesses, §365. Cf. *Machnofsky v. Smith et al.*, 101 Pa. Superior Ct. 578; *Cridge's Estate*, 289 Pa. 331, 137 A. 455. The dicta to the contrary in *Wells v. Insurance Co.*, 187 Pa. 166,

40 A. 802 does not accord with the weight of authority as to the better rule.

A confession of adultery unless corroborated by other evidence, direct or circumstantial, will not justify a divorce on that ground. *Morse v. Morse,* 81 Pa. Superior Ct. 602; *Randolph v. Randolph,* 59 Pa. Superior Ct. 377. As stated in *Matchin v. Matchin,* 6 Pa. 332, which is frequently cited as a leading case in Pennsylvania: "It is a rule of policy, . . . not to found a sentence of divorce on confession alone. Yet, where it is full, confidential, reluctant, free from suspicion of collusion, and corroborated by circumstances, it is ranked with the safest proofs." The actual fact of adultery need not be shown but circumstantial evidence of it, in corroboration of a confession, when considered with proof of the confession, must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person. *Newman v. Newman,* 170 Pa. Superior Ct. 238, 244, 85 A. 2d 613, applying the principle of *Viale v. Viale,* 109 Pa. Superior Ct. 560, 167 A. 437. Cf. *Frank v. Frank,* 99 Pa. Superior Ct. 183. The second admission in the doctor's office, as proven by libellant's parents, cannot be regarded as corroboration of the subject matter of the first confession made to libellant by the respondent. *Stanziola v. Stanziola,* 361 Pa. 209, 213, 64 A. 2d 807. It is but additional evidence that the wife admitted adultery and corroboration of her confessions aliunde was necessary under the above rule.

There are circumstances which rebut the truth of respondent's confession and not the least of these is the subsequent insanity of the wife. The separation occurred on June 6, 1946 and plaintiff filed his libel in divorce five days later. Shortly thereafter, the respondent retained counsel who have represented her in this proceeding since August 12, 1946. A master was ap-

pointed on September 12, 1946. The first hearing before the master was not held until May 19, 1950. In the meantime the wife showed evidence of mental derangement and she was committed to Allentown State Hospital on May 26, 1947, almost three years *before* the first hearing in this case, since when she has been hopelessly insane. Thus she was not given the opportunity of testifying in her own defense after this action was started and during the period of her mental competency. Her mental disorder has been determined to be dementia praecox of the catatonic type. Among the circumstances discrediting the adultery confessed by respondent are the following: There is no evidence in this record as to when the wife's insanity began or whether she had ever been examined as to her mental condition except as preliminary to her commitment. It is not improbable that her perturbed demeanor on June 6, 1946 at the time of her confession made to her husband, is attributable to a diseased mind in the early stage of incipient insanity. Moreover, libellant returned from the service in November 1945. It is difficult to credit him with believing that her fears of a venereal infection were well grounded, since she then had not seen Hamill for at least six months and had resumed marital relations with libellant throughout the period. A deteriorating mental condition may also account for the fact that she did not remonstrate against a physical examination by Dr. Rupp. From the circumstances surrounding that examination and the celerity with which the libel was filed, the suspicion persists that libellant took his parents to the doctor's office to qualify them as witnesses as to what might develop there, for future use.

The direct testimony of respondent's association with another man is meager. The witness Ruster testified at the first hearing before the master that he saw

her with Hamill on two occasions, between 8:30 and 9:00 o'clock in the evening, at the Lighthouse, a licensed restaurant of good reputation near Stroudsburg. His testimony related to the period when libellant was overseas. They came in "talking and laughing" and sat at a table on both occasions according to his testimony and were served there; he also testified that he saw her with Hamill in his car on several other evenings, but nothing more. The only additional evidence on the subject was produced by libellant at the final hearing before the master almost three years later. The witness Anne L. Premus then testified that at about 8 o'clock in the evening in September 1944 (eight years before) she saw respondent with Hamill in front of the Elks Club in East Stroudsburg and that "they had their arms around each other" as they walked to his automobile and that he "opened the door and let her in." She also testified that during August 1944 she had seen them together in Hamill's car on several evenings between 6 and 7 p.m. and that respondent then waved to her by way of greeting. We are in entire agreement with the lower court in the appraisal of this testimony. At most the respondent's association with Hamill was indiscreet but there is no evidence indicating an adulterous disposition on her part, much less evidence of circumstances in corroboration of her confession which will add up to the necessary clear and convincing proof of adultery essential to a decree of divorce in cases of this class. Hamill was served with a copy of the libel and had notice of the hearings before the master. The fact that he ignored the charge and did not appear to rebut it cannot be taken as evidence in support of the charge of adultery in this case under the circumstances.

The Commonwealth is an interested third party in this as in every divorce case. If the respondent com-

mitted adultery, whether sane or insane, the libellant is entitled to a divorce. But the Commonwealth's interest in the instant case goes beyond the mere question whether it should bear the whole cost of maintaining the respondent in a State hospital for the rest of her life without contribution from the libellant. Whether the marital contract shall be severed is always a grave question. *Middleton v. Middleton,* 187 Pa. 612, 615, 41 A. 291. And where a respondent is insane and is unable to be present at the hearing, to controvert testimony produced against her, the libellant's testimony should be carefully scrutinized. *Simon v. Simon,* 113 Pa. Superior Ct. 577, 173 A. 493. The association of respondent with Hamill under the testimony was not clandestine and the respondent well might have been given the opportunity to rebut any inference of adultery from her conduct with him. The first hearing in this case was not held until almost 4 years after the filing of the libel. The wife was not committed to the Allentown State Hospital until almost one year after the suit was brought. A hearing early in that period when the wife still had some mental capacity, would have been to her advantage. There is nothing in this record which justified the postponement of the hearings before the master until after respondent became hopelessly insane and could not testify.

Order affirmed.

WOODSIDE and ERVIN, JJ. dissent.