Jones *v.* Jones, Appellant.

462

Argued April 13, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Barron P. McCune*, with him *McCune and Greenlee*, for appellant.

*Sanford S. Finder*, for appellee.

OPINION BY WATKINS, J., June 10, 1959:

This is an appeal from the decree of the Court of Common Pleas of Washington County granting a divorce to Russell E. Jones, the appellee, from Pearl A. Jones, the appellant, on the ground of desertion. The parties were married on April 26, 1926, in Cumberland, Maryland. At the time of the hearing both were 52 years of age. There is one child, Charlotte Mae Shronovich, who is of age and married.

The marriage was not a happy one, the parties were separated on a number of occasions. The first separation occurred in 1938 for a period of three or four months. They were again separated in 1943 when the husband left his wife and child and set up a separate domicile and it was not until 1947 the wife rejoined her husband. However, she left him finally on February 15, 1953, and this action by the appellee followed after the passage of the statutory period. The master recommended a divorce and the majority of the court below, with President Judge Carson dissenting, dismissed the exceptions to the master's report and granted the decree.

The principal issue in this appeal is whether the appellee wife had reasonable cause to leave her husband on February 15, 1953, so that she was not guilty of wilful and malicious desertion. Act of May 2, 1929, P. L. 1237, §10; Act of March 19, 1943, P. L. 21, §1; 23 PS §10.

After a careful study of this record we are convinced that the wife sustained her burden of proving reasonable cause for leaving by an overwhelming preponderance of the evidence and that this husband failed in his burden of proving himself an injured and innocent spouse. *Soper v. Soper*, 178 Pa. Superior Ct. 182, 186, 112 A. 2d 420 (1955).

During the second separation from 1943 to 1947 the appellee lived in the same house, together and alone, with a certain Betty Gamble, in Hostetter, Pennsylvania. He claims she was merely his housekeeper but admits that people in the community called her Mrs. Jones. His daughter and son-in-law, Charlotte Mae Shronovich and Frank Shronovich, with whom he must have been on good terms, because of the evidence that the Shronovichs visited him when he was living with Betty Gamble and that the appellee and Betty Gamble,

in turn, visited with them, testified that the Gamble woman occupied the same bedroom with the appellee in his home and when the appellee and the Gamble woman visited them, they occupied a room with a double bed. The Shronovichs also testified that the husband took his so-called housekeeper out visiting; that they went drinking together; that they went to night clubs together; that in their presence she sat on the appellant's lap.

The wife was painfully aware of the conduct of the appellee during this period and suffered from a nervous condition. Notwithstanding her knowledge of the appellee's relationship with Betty Gamble, and despite her failing health, which she attributed to her marital trouble, she accepted his promises to be faithful and to support her as a good husband, and returned to him in 1947.

After the reconciliation she was naturally alert to her husband's unfaithful disposition. In 1951 a letter from Betty Gamble, to her husband, was delivered to their home and an exchange of letters between them continued thereafter. These letters indicated an intimate relationship. The wife also discovered that the appellee was associating with a Mary Miller, and she saw them together on numerous occasions, as well as seeing his car parked near her home.

Does the record of the appellee's past conduct with Betty Gamble, from which a clear inference of adultery may be gathered; the present correspondence with his former paramour; and the evidence of his new association with Mary Miller; provide the preponderance of evidence necessary to provide the good grounds for believing her husband was unfaithful, so that she was justified in leaving without being guilty of desertion under the reasoning of *Copeland v. Copeland,* 155 Pa. Superior Ct. 102, 38 A. 2d 364 (1944)? See also: *Dash*

*v. Dash,* 357 Pa. 125, 130, 53 A. 2d 89 (1947); *Stanziola v. Stanziola,* 361 Pa. 209, 214, 64 A. 2d 807 (1949); *Paterson v. Paterson,* 178 Pa. Superior Ct. 615, 620, 115 A. 2d 919 (1955).

It is, of course, well settled that "The reasonable cause which is justification for husband or wife in quitting and abandoning the other is that, and only that, which would entitle the separating party to a divorce." *Boyles v. Boyles,* 179 Pa. Superior Ct. 184, 116 A. 2d 248 (1955). So that we must find not only that she had good grounds for believing her husband unfaithful, but that the grounds must be such as would entitle her to a divorce.

The appellant at the master's hearing attempted to bolster her case of "reasonable cause for leaving" because of the infidelity of the appellee by showing his course of conduct since the separation. The master refused to permit the introduction of this testimony and this action was clearly prejudicial to her case. We said in *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 130 A. 2d 265 (1957), "The conduct of the defendant after the separation is admissible . . . Evidence of the conduct of the parties after separation is relevant for the purpose of shedding light upon their behavior prior to the separation." Such testimony, therefore, might certainly strengthen the proof of the appellant as to good grounds for her belief of his infidelity.

We cannot agree with Judge WEINER who wrote the majority opinion for the court below where he says, "the Master was correct in disregarding all the testimony with reference to the occurrences prior to 1947 when the defendant resumed cohabitation with her husband, with full knowledge thereof. This resumption of cohabitation, with knowledge, is a complete condonation of the plaintiff's conduct prior thereto." Judge WEINER so interpreted *Boyles v. Boyles,* supra. The

*Boyles* case, however, is authority for the proposition that a resumption of cohabitation, with knowledge of the prior infidelity of one's spouse, is a "bar to a divorce on the ground of adultery."

The law is clearly set forth in *Boyer v. Boyer,* supra, at page 266: "Having condoned the adultery the plaintiff is not entitled to a divorce on that ground, but condonation is not a bar to an action based upon indignities to the person." Nor is condonation a bar to an action based on cruel and barbarous treatment. *Nixon v. Nixon,* 329 Pa. 256, 269, 198 A. 154 (1938). See also: *Van Houten v. Van Houten,* 174 Pa. Superior Ct. 29, 31, 98 A. 2d 397 (1953).

The grounds for the reasonableness of the separation as contended for by the appellant are as follows: (1) A reasonable belief of her husband's infidelities; (2) Cruel and barbarous treatment; (3) Indignities.

Applying the law with regard to condonation to the facts of this case would eliminate adultery from any consideration as a reason for the appellant leaving her husband. It seems to be apparent, that although there is a clear inference of adultery prior to reconciliation, it is barred by condonation, and there is insufficient evidence since the reconciliation from which an inference of adultery might arise.

We are not placed in the position of deciding whether the record of the appellee's infidelities, alone, indicate a course of conduct on the part of the appellee that warranted a separation, although it has been held that, "Conduct by a husband with respect to other women, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity to a wife rendering her condition intolerable and life burdensome." *Macormac v. Macormac,* 159 Pa. Superior Ct. 378, 380, 48 A. 2d 136 (1946). However, appellee's infidelities were not the only evidence from which an

inference of his settled hatred for, and estrangement from appellant may be deduced.

President Judge CARSON in his dissenting opinion summarizes the facts as follows:

"The plaintiff's treatment of the defendant after their reconciliation in 1947 at first was commendable, but with the renewal of his drinking activities, particularly over the weekends, he again resumed his course of abuse, cruelty and intimidation toward her, consisting, inter alia, of striking her over the head with a ketchup bottle, inflicting painful black and blue marks upon her, violently choking her, firing a .38 revolver within a few feet of her, forcing her to sleep in a separate room and renewing correspondence by mail with Betty (Chester) Gamble. This course of conduct brought a nervous condition and failing health upon the defendant. She justifiably and reasonably became fearful of her life and health, moved in with her daughter in February of 1953.

"This plaintiff, who has twice separated himself from his wife, has finally succeeded by his violent course of conduct in forcing her out the door. It would seem from a review of all the cases cited in the briefs and an independent research of the law, that there are hundreds of cases which could be quoted and cited, but eventually the question arises as to whether this third separation of this marital union, was done by the wife without a reasonable cause. When the plaintiff, after being accepted back after living an adulterous life, again resumes the type of conduct that caused him to separate before, to wit, excessive drinking on the weekends, returning from these sprees apparently soured in mind and in spirit, compelling his wife to sleep in a separate bed, renewed correspondence with his discarded paramour, beating his wife over the head with a ketchup bottle, striking her, giving her black and blue

468

marks, choking her in bed into a semi-conscious condition so that she lost control of her bowel movement and then angrily firing a .38 revolver near her in the room, if this was not sufficient cause for this ailing woman to leave her home, it would be difficult to find a set of circumstances where a wife had a reasonable cause to leave."

It is apparent that even if we were to conclude that the evidence of infidelities, standing alone, would not justify her separation; and if we were to conclude that the several acts of violence, standing alone, would not constitute cruel and barbarous treatment, and so justify her separation; certainly, taken together with the other facts in the record they establish by the overwhelming preponderance of the evidence, a course of conduct that constitutes such indignities to her person as to render her condition intolerable, her life burdensome and clearly justify her separation from her husband.

As to his burden of proof that he was an injured and innocent spouse, the law, although not requiring that he be wholly free from fault, may hold him derelict and deny him relief because of conduct falling short of grounds for divorce. *Newman v. Newman,* 170 Pa. Superior Ct. 238, 85 A. 2d 613 (1952). In exercising our responsibility to hear this case and examine this record de novo we cannot see how it is possible to hold this appellee to be an innocent and injured spouse.

Decree reversed and libel dismissed.