## Commonwealth v. Shallenberger

*David B. Reiss,* for the Commonwealth.
*Daniel L. Webster,* for defendant.

FRANKS, *J.,* September 3, 1985 — Defendant has presented to this court an omnibus pretrial motion consisting of a motion in limine and a motion requesting a change of venue. After hearings, consideration of briefs and oral arguments, for the reasons stated below we will grant defendant's omnibus motion in its entirety.

## BACKGROUND

Defendant was charged with indecent assault, indecent exposure, and corruption of the morals of a minor. The alleged victim is an 11-year-old Dutch national, who was in this country under defendant's auspices as a choir boy. A warrant for defendant's arrest was issued, and he was taken into custody in New York City prior to leaving the country on business. Upon his return defendant was met by an angry, jeering mob at his arraignment.

## A. MOTION IN LIMINE

Defendant has asked this court to preclude the disclosure of any statements of an incriminating nature he may have made to Reverend William Parks or Reverend David Jones during a meeting held sometime after March 8, 1985. He argues that section 5943 of the Judicial Code, 42 Pa.C.S. §5943, precludes disclosure of the conversation. We agree with defendant's position.

Section 5943 precludes the disclosure of *any* information which has been acquired in secret or confidence by a member of the clergy during the course of his duties. The testimony of Reverend Parks clearly indicates that he and Reverend Jones are ministers within the meaning of the statute. Testimony confirms that the meeting between the ministers and defendant consisted of confidential spiritual counselling. Under the statute any information received by the ministers would be privileged and therefore must be suppressed. Commonwealth ex rel. M.B. v. L.D.B., 295 Pa. Super. 1, 440 A.2d 1192 (1982).

The Commonwealth contends that the presence of Reverend Jones vitiates the privilege. We find Reverend Jones was acting in his professional ca-

pacity as a minister. He was present at the request of Reverend Parks and was introduced as a minister to defendant. Reverend Parks testified that defendant upon introduction to Reverend Jones enlisted his assistances in the counselling session. The evidence presented indicates that, in fact, Reverend Jones did act as a spiritual counsellor.

Even if we find that Reverend Jones did not act as a minister to defendant, Reverend Jones acted as an agent for Reverend Parks and thus maintained the privilege. It has been held where an individual is acting as an agent to one of the parties of a privilege, the privilege is not destroyed. Thus the assistance of a nurse during an examination does not destroy the physician-client privilege. Gilham v. Gilham, 177 Pa. Super. 328, 110 A.2d 915 (1955). Similarly the use of an investigator by the public defender's office does not destroy the attorney-client privilege even though the statements by defendant were made without the attorney being present. Commonwealth v. Hutchinson, 290 Pa. Super. 256, 434 A.2d 740 (1981). In both of these cases the privilege was extended to the agent, thus barring their testimony.

Here Reverend Jones was acting at the request of Reverend Parks. He was in a stituation analogous to that of a female nurse who would, for the protection of a male doctor, be present during the examination of a female patient. We believe the privilege would extend to both the nurse and to Reverend Jones.

## B. MOTION FOR A CHANGE OF VENUE

In regard to the motion for change of venue, we start out with the premise that there is no constitutional right to a change of venue. Commonwealth v. Stolzfus, 462 Pa. 43, 337 A.2d 873 (1985). However, if the pervasiveness and character of the pretrial publicity is such that defendant is denied either

an impartial jury or due process of law, then there may be constitutional implications.

Defendant must demonstrate that the publicity will deny him a fair trial. He may show that the extensive pretrial publicity caused actual jury prejudice. Commonwealth v. Rigler, 488 Pa. 441, 412 A.2d 846 (1980). However, actual prejudice need not be shown if defendant can prove that the publicity was so extensive, inflammatory, sustained and inculpatory that denial of due process is inherent in the situation. Commonwealth v. Martin, 465 Pa. 134, 348 A.2d 391 (1975).

Commonwealth v. Frazier, 471 Pa. 121, 369 A.2d 1224 (1977), sets forth three areas where actual prejudice need not be shown. Does the publicity contain references to the accused's prior record of criminal convictions? Does it expose jurors to inculpatory statements made by defendant? Does it indicate defendant's guilt in terms that are emotional and inflammatory? Frazier holds that if any of these questions are answered in the affirmative, the court should inquire as to the "likelihood that a significant portion of the population was exposed to publicity of that nature." Id. at 132, 369 A.2d 1229.

In the instant case nearly all of the news reports contain information concerning defendant's prior convictions. Many of these accounts focused on the portion of the previous sentence which required defendant to avoid children. Only one article went further to explain that after the termination of the probation defendant was free to resume his work as a child-talent scout. Even without this lack of explanation it would not be necessary for defendant to demonstrate that the news accounts of his prior convictions were sensational. Commonwealth v. Daugherty, 493 Pa. 273, 426 A.2d 104 (1981).

While the publicity did not contain any inculpatory statements relating to the present charges, the accounts did include prior guilty pleas to the convictions noted above. Defendant's motion in limine also received some publicity.

Most inflammatory was the coverage of defendant's arraignment. Front pages and television depicted an angry, jeering mob of 100 to 200 people. The crowd shouted "hang him" and other disparaging remarks at defendant prior to and after the hearing. It appeared prior to this incident the news accounts had been reasonably factual. After this incident the accounts were pushed to the front pages and headlines. A number of these accounts contained segments on local opinion which included conclusions of defendant's guilt.

Highly prejudicial was the television interview of a former victim who recounted his emotional trauma from his episode. He further expressed an opinion that defendant's sentence was too light in his case. The interview was emotional and inflammatory.

News accounts of comments by the arresting officer, prosecutor, and district justice added to the inflammatory nature of the case. The officer spoke to his inability, due to department policy, to inform individuals who inquired about defendant's character and of defendant's prior record. The officer was also associated with comments concerning the prior record. The prosecutor informed the media that the district attorney's office would not take a plea bargain in this case. The district justice was quoted on the necessity for setting bail at an amount which would deter defendant from leaving the jurisdiction. The ABA Standards on Fair Trial and Free Press, 54 ABA Journal 243 (1968), cautions against extrajudicial statements by officers, attorneys and the ju-

diciary. Commonwealth v. Pierce, 451 Pa. 1190, 303 A.2d 209 (1977), also found that comments from these individuals lends an aura of acceptability to the articles in which those comments appear.

The level and nature of the publicity would, under Frazier, require an examination of the dissemination of the news accounts. From the evidence submitted by defendant, we find that every television station and major newspaper servicing Fayette County carried some part of the objectionable publicity. From the number of households which receive these stations and publications we find that a significant percentage of the prospective jurors would have been subjected to the pretrial publicity.

We also do not find the lapse of time between the publicity and trial sufficient to dissipate the effects of the earlier accounts. Each time a subsequent step in the judicial process has been taken a rash of articles and television segments have been forthcoming. As defendant pointed out, his June filing of the motion we consider today brought forth further coverage.

We find the pretrial publicity has so infused Fayette County with emotional and inflammatory information that defendant will not be able to receive a fair and impartial trial. We also find that the publicity was substantially generated by the nature of the offense, the age and situation of the victim and the notoriety of defendant. Therefore, we find that defendant is entitled to a change of venue, but if convicted he must shoulder the burden of the costs associated by the change of venue. Commonwealth v. Coder, 490 Pa. 187, 415 A.2d 406 (1980).

## ORDER

And now, this September 3, 1985, it is hereby ordered and directed that the testimony of Reverend

Parks and Reverend Jones be suppressed; that defendant be granted a change of venue; and that the costs of the change of venue be paid by defendant if found guilty.