Gerenbeck *v.* Gerenbeck, Appellant.

Argued September 13, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Michael C. Rainone,* with him *J. Earl Simmons, Jr.,* for appellant.

*David Fitzgerald,* for appellee.

OPINION BY MONTGOMERY, J., November 15, 1962:

This is an appeal from a decree of divorce a.v.m. granted by the lower court subsequent to its dismissal of the appellant's exceptions to the master's report in an action brought by the husband-appellee against the wife-appellant on the grounds of indignities to the person. The parties were married on March 23, 1935, at West Collingswood, New Jersey. Three children were born of the marriage. Both parties are members of the Society of Friends' religion and are at the present time fifty-one years of age.

The parties had been married for twenty-five years prior to their separation. Despite financial problems, the parties had a normally happy married life until 1945. The testimony as to the conduct of both parties subsequent to that year is conflicting. Appellee accuses the appellant of belittling him, a college graduate, in his employment by calling him a "laborer" who carried his lunch to work in a bag. She also called him a "mamma's boy" who never really left home; that he had neither initiative nor a satisfactory job and was making his family live in a dilapidated house. She told

the appellee that he was as feeble-minded as his sister who was in a mental institution. She made derogatory remarks about her husband while she was at work and in the presence of others, and also called him stupid within the hearing of their neighbors. In the course of these arguments, appellant would pursue her husband to different parts of the house although appellee remained silent. In addition to this type of verbal abuse, the appellant made a large number of overdrafts on the couple's joint bank account without knowledge of her husband. She also made withdrawals from an account which was set up for the education of their children. This testimony of the appellee was corroborated by other witnesses. Their daughter, Lydia, testified that ". . . an everyday thing would happen and mother would start an argument." She further testified that her mother would pursue her father to other parts of the house, or out in the yard, or to the car to continue the argument. This testimony was also corroborated by E. Chadwick Squires, a friend and lodger in the Gerenbeck home during 1958, and Francis Bosworth, a former employer of the appellant.

Appellee testified to many other occasions when seemingly minor occurrences precipitated criticism, antagonism, and complaints on the part of his wife. He also testified that he was continually rebuffed in his attempts at marital relations and that there had been no intercourse after daughter Martha's birth in 1945.

The only violence alleged by the appellee in his testimony is that on two separate occasions the defendant struck him. The first of these was in March, 1958, when as a result of an argument, he said the appellant came at him with both fists. The second occurred while driving, and, according to the appellee, required him to pull to the side of the road and stop. In reference to both of these occasions, the appellant denied ever bodily attacking the appellee.

In her case the appellant was led by counsel, statement by statement, incident by incident, virtually through everything that had been testified to by the appellee and his witnesses. Much of this was categorically denied, although unconvincingly in the judgment of the master. She made several admissions such as the overdrafts, the comparison of the appellee's mentality and that of his feeble-minded sister.

The appellant's five witnesses testified that never in their presence had the appellant criticized the appellee; however, their daughter Lydia testified that, "Things really weren't said in front of others."

The master in his report was favorably impressed by the demeanor of the appellee. He stated that the appellee's answers were responsive and complete, whereas he was unfavorably impressed by the demeanor of the appellant and found her testimony rambling.

The master found this a difficult case to decide because of the fact that both parties are persons of such essential refinement and mildness, undoubtedly reflecting their religious faith and background, that there was a complete absence of evidence or even charges of violence, vulgarity, immorality, indecency or other types of conduct resulting in divorce cases. However, after considering the conduct of the appellant in relation to the parties' background, position and character, the master concluded that the appellee had sustained his burden of proof and recommended the divorce be granted. The court below dismissed the exceptions to the master's report and further found that all of the tests established in *Henszey v. Henszey,* 195 Pa. Superior Ct. 377, 171 A. 2d 837, had been met with the exception of vulgarity. It is from this order that this appeal has been taken.

This Court has frequently stated that the findings and conclusions of the court below and the findings and recommendations of the master are entitled to

the fullest consideration. *Davidson v. Davidson,* 191 Pa. Superior Ct. 305, 156 A. 2d 549. Where credibility is the important factor, the determinations of the trier of fact and his appraisal of the credibility of the parties' and their witnesses' testimony, though not binding upon the Superior Court, will not lightly be disturbed, especially where the master painstakenly reviewed the testimony in detail and made specific findings as to particular witnesses' credibility, together with his reasons for believing or disbelieving them. *Lilley v. Lilley,* 196 Pa. Superior Ct. 261, 175 A. 2d 164; *Williams v. Williams,* 180 Pa. Superior Ct. 114, 118 A. 2d 591; *Ranieri v. Ranieri,* 174 Pa. Superior Ct. 618, 101 A. 2d 177.

We have completely reviewed the record in this case and are satisfied that the master's findings of fact are sufficiently substantiated by the evidence. The master found the husband's testimony was more trustworthy than that of the wife and did so only after comparing and analyzing the inconsistencies and giving logical reasons for his conclusions. Since the master saw and heard the witnesses and noted their demeanor, his conclusions are persuasive; however, our own reading of the testimony itself constrains us to reach the same conclusions.

The question remains whether the evidence produced by the appellee and his witnesses established indignities to the person within the meaning of the divorce law. It has been reiterated many times that no general rule can be laid down as to what constitutes such indignities to the person as to render the condition of an injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character, and disposition of the parties. *Foley v. Foley,* 188 Pa. Superior Ct. 292, 146 A. 2d 328; *Breene v. Breene,* 76 Pa. Superior Ct. 568. It has been

held, however, that indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement. *Henszey v. Henszey,* supra; *Rosenblatt v. Rosenblatt,* 186 Pa. Superior Ct. 503, 142 A. 2d 390.

The appellant contends that no single instance of her conduct nor any combination as appears from the appellee's case is sufficient in and of itself to show that appellant plainly manifested settled hate and estrangement. It is true that nagging, petty quarrels, lack of affection, surliness, a disagreeable disposition or other antagonistic attitude in themselves do not constitute indignities, *Boyles v. Boyles,* 179 Pa. Superior Ct. 184, 116 A. 2d 248; *Raney v. Raney,* 171 Pa. Superior Ct. 43, 90 A. 2d 355; however, where such actions or a combination of them are an affront to the personality of the other spouse or manifest a lack of reverence for the personality of the other spouse and when these offenses are continued or persisted in, such conduct clearly demonstrates that the love and affection upon which the matrimonial status rests have been permanently replaced by hatred and estrangement. *Darcy v. Darcy,* 197 Pa. Superior Ct. 100, 176 A. 2d 919; *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 130 A. 2d 265.

In *Trueg v. Trueg,* 190 Pa. Superior Ct. 78, 151 A. 2d 786, a case quite similar to this, it was held that the actions of the spouse must be considered in connection with the background, character and disposition of the parties. The parties here are of essentially refined background. Both are members of a strict and disciplinary religion, the very basis of which is service to others and pacifism. Both parties, prior to the unfortunate conduct complained of in this divorce action, lived together in a quiet, dignified and respectful manner. Under these particular circumstances, an an-

tagonistic attitude of the appellant coupled with her continuous nagging and prolonged arguments, certainly manifest such hatred and estrangement as to constitute indignities within the meaning of the divorce law.

Decree affirmed.