Gehris *v.* Gehris, Appellant.

Submitted June 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Arthur Ed. Saylor,* and *Edelman, Schaeffer, Saylor, Readinger and Poore,* for appellant.

*Donald R. Butler* and *James F. Mundy,* for appellee.

OPINION BY HOFFMAN, J., March 31, 1975:

Appellant, the defendant in a divorce action in the court below, claims that her conduct did not constitute "indignities" sufficient to render the appellee-husband's life "intolerable" and "burdensome." Further, she con-

tends that the husband was not an "injured and innocent spouse."

In September, 1972, the husband filed a complaint for a divorce a.v.m. in the Court of Common Pleas for Susquehanna County against the appellant wherein he alleged indignities. The case was heard on June 6, 1973, by Judge Donald O'MALLEY, sitting without a jury. The court granted the husband a decree of divorce a.v.m. on November 13, 1973. The following are the facts as presented by the court below.

James and Nicole Gehris, parties to the action below, were married in France in 1960 during the husband's tour of duty with the Air Force. The couple came to the United States in 1961 and resided in Illinois at Scott Air Force base, where they began to experience marital difficulties. In 1964, the Gehrises moved to Carbondale, Illinois, where the husband attended college in an effort to improve his job opportunities. The marriage at that point was marred by the wife's frequent complaints that his attendance at school was worthless, that he should be earning money instead of attending school, and that he was not making enough money in his part-time job. After the husband completed college, he took a job as a rehabilitation counselor for the State of Illinois. Despite the husband's willingness to improve his job status and to work at part-time jobs in addition to his regular job, the wife was never satisfied with their financial status. Although she complained that she was never able to take a vacation, the wife, a French national, actually managed to take three trips to France during the marriage. She complained that Illinois was too flat; the husband responded by moving the family to Montrose, Pennsylvania, in 1967. Even after the family relocated in Pennsylvania, the wife continued to complain about living conditions. She consistently rejected her husband's suggestions to meet people socially, to join organizations, and to become an American citizen.

The court found further that the wife abruptly left a Christmas party to the embarrassment of her husband; that she cashed a check for $400.00 from a joint account, thereby overdrawing the account and requiring the husband to take out a loan to cover the overdraft; that the wife destroyed a number of her husband's record albums and cut up part of his slide collection; that the husband, as a result of the tension in the marital abode, became nervous and ill and was unable to work effectively in his job as a rehabilitation counselor.

The wife alleged at trial that her husband was having an affair with another woman during their marriage and that he had told her that he wanted a divorce in order to marry the other woman. The husband, however, testified that he had started "keeping company" with the woman involved, a fellow worker at his place of employment, six months after he had left his wife. He denied any amorous involvement with her prior to the separation from his wife.

The hearing judge gave considerable weight to the husband's testimony concerning his affair. Further, the court stated that the husband's contentions concerning the wife's constant complaints about living conditions and the husband's lack of earning capacity were uncontested.

In order to qualify for a divorce a.v.m., a party must meet the standards set forth in the Pennsylvania Divorce Law.[1] Specifically at issue in the present case is §10 (f) which provides *inter alia* that: ". . . it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, . . . that the other spouse: . . . (f) [s]hall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome; . . ." Courts have had difficulty in laying down a general rule to determine what constitutes "indignities." It has been held, however, that "indignities

---

1.  1929, May 2, P. L. 1237, §1 et seq.; 23 P.S. §1 et seq.

may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement." *Gerenbeck v. Gerenbeck,* 199 Pa. Superior Ct. 410, 416, 186 A. 2d 49, 52 (1962) ; see also, *Fodor v. Fodor,* 221 Pa. Superior Ct. 321, 292 A. 2d 485 (1972).

The law is clear that when a divorce matter is heard by a judge sitting without a jury, this Court must make a complete and independent review of the record of the proceedings below. *Eifert v. Eifert,* 219 Pa. Superior Ct. 373, 281 A. 2d 657 (1971). The Court's review extends even to matters of credibility. *Del Vecchio v. Del Vecchio,* 169 Pa. Superior Ct. 617, 84 A. 2d 261 (1951). The Court must "examin[e] the record to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods. . . ." 12 P.L.E. §143 Divorce; see also, *Faszczewski v. Faszczewski,* 182 Pa. Superior Ct. 295, 126 A. 2d 773 (1956) ; *Rankin v. Rankin,* 181 Pa. Superior Ct. 414, 124 A. 2d 639 (1956). The obvious important exception to de novo review by a reviewing court is that great weight must be accorded to the findings of the court or master below if the issues of credibility are ones that are necessarily resolved by personal observations. For example, if the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and is the kind of evidence that cannot effectively be reviewed by an appellate court. See, *Rankin,* supra; *Uhlinger v. Uhlinger,* 169 Pa. Superior Ct. 574, 83 A. 2d 423 (1951) ; *Partleton v. Partleton,* 169 Pa. Superior Ct. 485, 82 A. 2d 684 (1951) ; *Spence v. Spence,* 167 Pa. Superior Ct. 248, 74 A. 2d 495 (1950).

In the instant case, the only evidence presented was oral testimony by the two litigants. Several events that

were relied on by the trial judge to find that indignities existed rested directly on credibility. For example, the husband testified that the wife had overdrawn their checking account in an attempt to embarrass him. The wife admitted cashing the check but gave a different account of her motivation. The trial judge cites her action as part of his finding of indignities; therefore, he believed the husband's account of the incident and rejected that of the wife. Another finding relevant to the judge's grant of the divorce to the husband was that the wife unreasonably refused to become a United States citizen. The wife's brief contests the idea that her refusal to do so was intended to humiliate and embarrass her husband; "[s]uch a conclusion . . . simply does not follow; one's reasons for not relinquishing one's foreign citizenship may be many and varied . . . ." Faced merely with the record in which the wife asserts that her refusal was not intended to embarrass the husband and the husband states that her actions were so intended, this Court has little basis to decide the question. The Court, however, is not merely faced with two contradictory statements. The Court has the benefit of the opinion of the judge who heard the testimony that indicates that he believed the husband's statement. Other evidence can be analyzed in the same light: for example, the hearing judge decided that the wife was not sincere when she testified that she still loved her husband and desired to continue the marital relationship.

In addition to arguing that the husband did not prove indignities, the wife contends that her husband was not an injured and innocent party as required under the statute. At issue is whether the husband was carrying on a meretricious relationship with a fellow employee before or after the couple's separation. If before, then the husband cannot qualify as an innocent party. Cf. *Orsuto v. Orsuto*, 171 Pa. Superior Ct. 532, 91 A. 2d 284 (1952). If the adultery occurred after the right to the divorce had

accrued, it is not grounds to deny the divorce: "In *Clark v. Clark*, 160 Pa. Superior Ct. 562, 52 A. 2d 351, the husband sought a divorce on the ground of indignities. In defense, the wife presented testimony tending to show that, subsequent to the acts of indignities, there had been intimacies between the husband and another woman. It was held that the alleged adultery was not a defense." *Berezin v. Berezin*, 186 Pa. Superior Ct. 340, 344, 142 A. 2d 741 (1958), citing extensive authority; see also, *Kowalchick v. Kowalchick*, 187 Pa. Superior Ct. 201, 144 A. 2d 742 (1958); *Spence*, supra.

The testimony before the hearing judge was contradictory on the point of when the amorous relationship began. The wife testified to the husband's admissions before separation; the husband stated that the relationship began six months after the separation. The lower court believed the husband's version of the story: "this is the only evidence in the case which would challenge the Plaintiff's right to a divorce. . . . He did nothing before the separation that forecloses him from bringing the divorce action." The trial court believed the husband's testimony. There is nothing inherently more plausible or implausible in either litigant's story so that the decision to accept the husband's story was appropriately made by the hearing judge and must be accorded great weight by our Court. Therefore, because the affair began six months after the separation, it could not have been the cause of the wife's hostilities. That is, the husband's right to divorce had accrued before the adulterous relationship began.

Because the husband is an innocent and injured party who has suffered indignities at the hands of his spouse, he is entitled to a divorce a.v.m.; therefore, the decree of divorce is affirmed.

---

DISSENTING OPINION BY VAN DER VOORT, J.:

Appeal is taken to this Court by Defendant, the unsuccessful party in the Court of Common Pleas grant of

divorce to Plaintiff—husband, pursuant to "The Divorce Law", 1929, May 2, P.L. 1237, Section 60.

I have reviewed the entire record of the court below, and conducted an independent review of the facts, there having been no jury trial. *Eifert v. Eifert,* 219 Pa. Superior Ct. 373, 281 A.2d 657 (1971) ; *Goldfine v. Goldfine,* 201 Pa. Superior Ct. 462, 193 A.2d 695 (1963). I rely to a considerable degree on a history of the case filed by the trial judge, Honorable Donald O'MALLEY.

Plaintiff and Defendant were married in 1960 in France, while Plaintiff was present there serving in the armed forces of the United States. Defendant was and remains a French national. They moved to the United States and lived in various localities prior to assuming residence in Montrose, Susquehanna County, Pennsylvania. There were two children born of the marriage; Christine, age 13 and Bevin, age 4. Both children are in the custody of and reside with their mother, Defendant herein.

Aside from the usual domestic difficulties surfacing early in a marriage, and the unique problems of Defendant-wife's adjustments to a new culture and customs, both of which I recognize without further comment, a course of conduct developed in 1966 which became the gravamen of Plaintiff's argument in his Complaint in Divorce. Defendant found fault with Plaintiff's profession and expressed complaints about his earning capabilities. On a number of occasions, Defendant allegedly held Plaintiff up to ridicule before their peers. Constant nagging and arguing may well establish a settled course of conduct which may clearly demonstrate that the love in a marriage has been replaced by hate, and this may establish grounds of indignities. *Fodor v. Fodor,* 221 Pa. Superior Ct. 321, 292 A.2d 485 (1972).

It is not the function of this court to determine which party is blameless, but rather to examine the facts of this case and attempt to determine which party is the lesser

open to the charge of causing the situation of which libellant complains. *Griffie v. Griffie*, 220 Pa. Superior Ct. 461, 289 A.2d 198 (1972). Based upon my study of the facts, I find Plaintiff is not both innocent and injured, the dual requirements to allow upholding the Order granting Plaintiff's divorce. There is substantial testimony that Plaintiff engaged in a meretricious relationship while still subject to the bonds of matrimony and to the duty of supporting and maintaining a good home life for his chil‧dren. I disagree with the learned trial judge only to say that the period between (1) the time when Plaintiff's alleged grounds for divorce accrued and he separated from Defendant, and (2) his bringing this action, was not sufficiently long to discount testimony of his alleged and admitted affairs of the heart with a woman other than his wife. Plaintiff separated from Defendant in November of 1971 and brought this action on September 13, 1972, less than one year later. This is substantially less than the nine years which passed in *Gillen v. Gillen*, 195 Pa. Superior Ct. 60, 64, 169 A. 2d 340, 343 (1961), wherein the Honorable Harry M. MONTGOMERY, Judge, found that "grounds for divorce had fully accrued many years prior to this time and did not provoke the indignities of which she [appellee] complained." I disagree with the lower court's reliance upon the holding of this case. It appears obvious to me that Plaintiff Gehris' conduct in regard to an on-going and admitted affair with another woman provoked the Defendant's hostilities. I would not find that either litigant is responsible to any lesser degree for the alleged indignities.

The weakness of the Plaintiff's position was further illustrated by his testimony as to the incident which caused him to leave his wife and family. He had a hobby of jogging. This night he had been out running for two hours. When he returned his wife chided him saying "you spend more time with your running than you do with your children." This remark he said made him so angry

that he decided to leave the common abode and did so. This impresses me as a most flimsy reason for breaking up a home.

My findings are made with all respect due and cognizance of the finding of the Court below, who noted a pattern of hate and estrangement sufficient to grant divorce. But unless and until our Legislature, in its wisdom, may see fit to lessen the requirements of innocence and injury on the part of libellant, I believe that our Court is bound to its strictures in protecting the institution of marriage in our society.

I would not find Plaintiff—husband innocent and injured. Therefore, I would not find that Plaintiff has met his burden of proving indignities to himself.

I would reverse the order granting divorce.

PRICE, J., joins in this dissenting opinion.