359 A.2d 435

Sandra K. Himes SCHROCK o/w Sandra Himes Schrock, Appellant,

v.

Richard L. SCHROCK.

Superior Court of Pennsylvania.

June 28, 1976.

Kenneth A. Magar, Johnstown, for appellant.

Ronald P. Rusinak, Johnstown, for appellee.

PRICE, Judge.

This is an appeal from an order of the court below sustaining exceptions to a master's report and dismissing an action for divorce a vinculo matrimonii. After careful review of both the master's report and the findings of the lower court, we must agree with appellant that the lower court erred in dismissing the action for divorce.

Sandra and Richard Schrock were married on September 30, 1961. The parties, parents of three children, ages 12, 8, and 5, lived together for the next thirteen years, separating on March 13, 1974. On October 7, 1974, appellant filed a complaint in divorce, alleging indignities to the person.[1] A master's hearing was held on January

1. Act of May 2, 1929, P.L. 1237, § 10 *as amended* by the Act of March 19, 1943, P.L. 21, § 1 (23 P.S. § 10(f)).

30, 1975. The evidence adduced at this hearing consisted solely of the testimony of the two litigants.

Appellant's testimony may be summarized as follows: Appellee who was employed as an automobile mechanic, refused to bathe regularly, causing appellant much personal distress as well as public embarrassment in that she was unable to entertain guests at the Schrock household. Appellee also drank excessively, stayed out late at night, and had admitted to being sexually involved with his brother's former wife, Linda Schrock. Appellee's liaison with Linda was not his first adulterous encounter. Five years prior to their separation, while the parties were living in Virginia, appellee became intimate with another woman, resulting in the birth of a child. Although distressed, appellant agreed to continue the marriage after appellee promised to "remain true" to her. However, despite this promise in late 1973, he was now openly associating with Linda. In early 1974, appellee spent a weekend in Ohio with Linda and his children. On this occasion, he "flaunt[ed] his relationship" with Linda at appellant by audaciously inviting appellant to accompany them. Appellant declined this invitation. Subsequent to the Schrock's separation, appellee took Linda and the children to Canada, remaining there for five days. Prior to this trip, appellee had acquired possession of the children from appellant upon the premise that he was going to a carnival, not mentioning his intended trip to Canada. Four days later, he called appellant to inform her of the children's whereabouts and that they would soon be returned. In another incident, appellee placed their youngest child in his car, seized appellant who was on the outside of the car attempting to restrain him, and drove down an "extremely long hill," dragging appellant alongside the car. While they lived in Virginia, appellee's drinking habits were so costly that appellant was forced to seek employment in order to support herself. Additionally, appellee had frequently

threatened to commit suicide. As a result of these experiences, appellant lost eighteen pounds and was placed on tranquilizers by her physician.

Appellee, on the other hand, denied that he had failed to support his family while they lived in Virginia; that he had threatened to commit suicide; and that he had been unclean. Furthermore, he denied having had sexual relations with Linda explaining that he had taken her to Ohio at the request of his brother, and that she had accompanied him to Canada solely to care for the children. Appellee admitted to drinking while he lived in Virginia, but asserted that this practice had become a problem only during the six month period preceding the separation. Moreover, he had recently spent seven days at a clinic in Johnstown in an effort to overcome his problem, and now believes that he no longer needs help.

The master's report reflects his belief that appellant's portrayal of events was more credible than that of appellee. Accordingly, the master, in his opinion, recommended that a divorce be granted. The lower court, however, disregarded this recommendation and examined each specific alleged indignity, concluding that each alone was not a sufficient ground upon which to sustain a finding of indignities.

Before turning to the issues raised on this appeal, we must initially note that it is our duty, on appeal, to make an independent study of the record and to determine whether a legal cause of action for divorce exists. *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974); *Arcure v. Arcure*, 219 Pa.Super. 415, 281 A.2d 694 (1971). Moreover, while the master's findings of fact and recommendation that a divorce be granted are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witness, his findings should be given the fullest consideration. *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975); *Sells v.*

*Sells,* 228 Pa.Super. 331, 323 A.2d 20 (1974). Thus, in a case such as this, "[i]f the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and is the kind of evidence that cannot effectively be reviewed by an appellate court. (citations omitted)." *Gehris v. Gehris, supra,* 233 Pa.Super. at 148, 334 A.2d at 755.

■ The appellant contends that her husband was guilty of such indignities to her person as to render her condition intolerable and her life burdensome. As we have previously stated: " 'No general rule can be formulated as to what constitutes indignities in a particular case; such matters depend upon all the circumstances of the particular case. . . . ' " *Sells v. Sells, supra,* 228 Pa.Super. at 333–34, 323 A.2d at 22, *quoting Margolis v. Margolis,* 201 Pa.Super. 129, 133, 192 A.2d 228, 230 (1963). Realizing that no strict test applies, the Pennsylvania Supreme Court has delineated a framework of conduct within which we may examine to see if indignities are present: " 'Indignities *may* consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement: (citations omitted).' " *McKrell v. McKrell,* 352 Pa. 173, 180, 42 A.2d 609, 612 (1945), *quoting Martin v. Martin,* 154 Pa.Super. 313, 317, 35 A.2d 546, 548 (1944) (emphasis added). The court, in *McKrell,* further explained that indignities, in all cases, "[m]ust consist of such a course of conduct as is humiliating, degrading and inconsistent with the position and relation as a spouse." *McKrell v. McKrell, supra,* 352 Pa. at 180, 42 A.2d at 612. See *Steinke v. Steinke,* 238 Pa.Super. 74, 357 A.2d 674 (filed October 28, 1975) (Concurring Opinion by Spaeth, J.).

■ With these basic considerations in mind, an examination of the appellant's contentions, although large-

ly denied by the husband, leads us to conclude that the appellant's claim for a divorce predicated upon indignities was validly presented. Here, the husband admitted an extra-marital affair in 1969. Although the appellant was aware of her husband's transgression, she continued to live with him for the next five years. We have long held that a resumption of cohabitation, with knowledge of the prior infidelity of one's spouse, is not a bar to a divorce on the ground of indignities. *E. g., Jones v. Jones,* 189 Pa.Super. 461, 151 A.2d 643 (1959). This is especially true where there is evidence, as in the present case, that the transgression has been repeated. *Cf. Barr v. Barr, supra.*

It is clear that the appellant is most directly offended by the relationship between her husband and his former [2] sister-in-law, Linda Schrock. The husband admitted that before his separation from the appellant he spent a weekend with Linda in Ohio. He denied that he was sexually intimate with Linda, explaining that she accompanied him solely for the purpose of seeing his brother. The evidence also shows that the husband spent five days in Canada with Linda after the separation. The husband declared that she was present on this occasion solely to care for the children.[3] The lower court refused to view the husband's conduct with Linda as

2. We are unable to ascertain Ms. Linda Schrock's marital status from the record before us. The appellant declared that appellee's brother had divorced her. However, appellee testified that neither he nor Linda knew for sure whether this had actually occurred. All that is certain is that Linda does not presently reside with appellee's brother.

3. There is no question that this incident with Linda, although occurring after the separation, is admissible as evidence. As we have previously stated: " 'Evidence of the conduct of the parties after separation is relevant for the purpose of shedding light upon their behavior prior to the separation.' Such testimony, therefore, might certainly strengthen the proof of the appellant as to good grounds for her belief of his infidelity." *Jones v. Jones,* 189 Pa.Super. 461, 465, 151 A.2d 643, 645 (1959), *quoting,* in part, *Boyer v. Boyer,* 183 Pa.Super. 260, 267, 130 A.2d 265, 269 (1957).

constituting indignities to the appellant, stating that "[t]he principal difficulty, as we see it, with [appellant's] case, is her lack of corroborative evidence of indignities on the part of the [husband]." We find the lower court ruling to be in error.

On many occasions, the courts of this Commonwealth have ruled that evidence of an open and constant association with a member or members of the opposite sex is considered sufficient to support a divorce based upon indignities. *See, e. g., Wick v. Wick*, 352 Pa. 25, 42 A.2d 76 (1945); *Lowe v. Lowe*, 148 Pa.Super. 439, 25 A.2d 781 (1942); *Jones v. Jones, supra.* This is true even when the evidence presented is insufficient to support a charge of adultery. *E. g., Wick v. Wick, supra; Shoemaker v. Shoemaker*, 199 Pa.Super. 61, 184 A.2d 282 (1962). Here, the evidence is clear that the husband and Linda Schrock enjoyed an open and constant association, and, the compromising character of this association is enhanced by the appellant's testimony that the husband admitted "sleeping with" Linda. Furthermore, by demanding corroboration of the appellant's testimony, the lower court ignored the well-established principle that a divorce may be granted although predicated solely upon the uncorroborated testimony of one of the parties. *See, e. g., Barr v. Barr, supra.* "A divorce may be granted upon the uncorroborated testimony of the plaintiff unless, of course, that testimony 'is not only contradicted but also shaken by the defendant.' " *Arcure v. Arcure, supra*, 219 Pa.Super. at 417, 281 A.2d at 695, *citing Pascoe v. Pascoe*, 201 Pa.Super. 357, 359, 191 A.2d 739, 740 (1963). We agree with the master, who had the advantage of being able to observe the parties during the hearing, that the appellant's testimony was not shaken merely because the husband denied the damaging parts.

The evidence reveals more than the above-mentioned incidents of indignities. Although drunken-

ness, no matter how excessive, is not an indignity, indignities are not excused because committed while a party is intoxicated or because the indignities were caused by intoxication. *See, e. g., Shoemaker v. Shoemaker, supra.* The husband here admittedly drank to excess. This habit caused him to stay out at night, to support his family inadequately, and to allow his appearance to degenerate into a state of "disrepair." Furthermore, it is apparent that the master failed to believe the husband's claim that alcoholism presented no problem for him after his seven day stay in the hospital. The evidence also shows that the husband lied to his wife in order to gain possession of the children for the trip to Canada, and that he endangered her life by dragging her alongside his moving automobile. Certainly, we must conclude that the husband's course of conduct in the case before us was "[i]nconsistent with [his] position and relation as a spouse." *McKrell v. McKrell, supra,* 352 Pa. at 180, 42 A.2d at 612. After examining all the circumstances of this case, and according great weight to the findings of the master below, we hold that, viewed cumulatively, the appellee's course of conduct, as sworn to by the appellant, was sufficient to prove indignities. *See generally, Dougherty v. Dougherty,* 235 Pa.Super. 122, 339 A.2d 81 (1975).

The order of the lower court is reversed, and the court below is directed to enter a decree granting the divorce.