369 A.2d 396

**Edward J. DeBIAS**

v.

**Joan I. DeBIAS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 2, 1976.

Decided Nov. 22, 1976.

Lawrence M. Klemow, Hazleton, for appellant.

Joseph G. Greco, Nesquehoning, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal is taken from an order of the court below sustaining exceptions to a master's report and granting a divorce a vinculo matrimonii. Appellant, Joan I. DeBias, was the defendant in an action for divorce filed by appellee, Edward J. DeBias. Appellee's complaint claimed indignities [1] as the ground upon which divorce was sought. A hearing was held on December 27, 1974, before a master, resulting in the master's recommendation that the complaint be dismissed. A second master's hearing was held on April 2, 1975, at which time additional testimony was taken on behalf of appellee. The master again recommended dismissal of the complaint. The court below sustained objections to the master's findings and, on the basis of the record, granted a divorce on August 1, 1975. It is from that order that this appeal is taken. We reverse. After comprehensive review, pursuant to the scope of our appellate role in this

[1]. The Divorce Law states, in pertinent part:
". . . it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse:
. . .
(f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome;"
Act of May 2, 1929, P.L. 1237, § 10 *as amended* by the Act of March 19, 1943, P.L. 21, § 1 (23 P.S. § 10).

situation, we assent to the master's recommendation and commend his thoroughness and accuracy in this case.

Appellee alleged the following as examples of conduct by appellant constituting indignities: (1) that appellant repeatedly called appellee vulgar names in private and in public, and that this conduct often took place before their children; (2) that appellant embarrassed appellee at a banquet with a rude and profane reply to a question from a friend of appellee; (3) that appellant publicly nagged and criticized appellee, causing him humiliation; (4) that appellee's health was impaired as a result of appellant's behavior toward him; (5) that appellant, during arguments with appellee, often became enraged and threw objects at him, such as a coffee cup, dishes, pots, pans and appellee's wristwatch; and (6) that appellant repeatedly and unjustly accused appellee, in private and before their children, of having sexual relations with others. These events and actions purportedly took place from December, 1973 to April, 1974.[2]

At the first master's hearing, appellee's testimony was substantially a reiteration of the allegations stated above, with the addition of a claim that appellant once allegedly threatened to "blow his head off" with a shotgun. Appellant's version of their marital problems differed, in several aspects, from appellee's. Appellant testified that her marriage to appellee was happy until sometime in December of 1973.[3] It was then that appellant began to suspect her husband of seeing another woman. Her speculations were apparently based both on information received from others and on her own observations. She stated that appellee would come home at 4:00 a. m. or later approximately twice a week, with wrinkled clothes, swollen eyes and red marks on his neck. Appellant found lipstick and makeup, which she knew definitely

2. Appellee moved out of the marital home on May 24, 1974.
3. Appellant and appellee agree that their marital difficulties commenced at approximately this point in time.

not to be hers, upon appellee's clothes. Appellant assert-
ed that there was also a drastic change in the couple's
sexual relationship around this time. Appellee, who had
previously been very affectionate, consistently rejected
her in the marital bed. Appellee's only explanation for
his late hours was that he was bowling or at the local
firehouse. He denied that lipstick and makeup were to
be found on his clothes. His only explanation for repuls-
ing appellant's affectionate advances was that "he just
didn't feel like it."

Appellant testified that it was this behavior on the
part of appellee that led to confrontations between them,
arguments, name calling, and the throwing of various ar-
ticles. Appellant admitted often calling appellee vulgar
names in private and twice assailing him in the presence
of their children, but denied ever doing so in public. She
admitted throwing objects at appellee on several occa-
sions, but denied ever hitting him. She denied ever men-
acing appellee with a shotgun or threatening to shoot
him. Appellant stated that she had repeatedly accused
her husband of infidelity, but that she did then and still
does reasonably believe her accusations to be true. Ap-
pellant thus acknowledged the conduct represented as in-
dignities by appellee, but maintained that because her
suspicions were reasonable and her behavior was pro-
voked by appellee, her actions could not constitute indig-
nities under the law.

In support of her claim of reasonable suspicion, appel-
lant introduced the testimony of her sister, Geraldine
Haluska. This witness stated that she had seen appellee
and one Helen Kohut in a bowling alley, holding hands
and embracing, that she had seen appellee's car parked
in front of Ms. Kohut's house at 11:30 p. m., and that she
had seen appellee and Ms. Kohut driving around Tres-
ckow, sitting close together and holding hands. Mrs.
Haluska also corroborated appellant's version of an inci-
dent which apparently occurred in late November or ear-

ly December of 1974. Appellant and her sister were on a shopping trip when appellant noticed appellee's Jeep parked near a trailer. They stopped to "see what [was] going on." The following dialogue took place, according to Mrs. Haluska:

Appellant: "Is this where you and the whore are shacking up?"

Appellee: "Definitely—yes."

Mrs. Haluska: "Did you and the broad hang up the curtains together?"

Appellee: "Yes."

In his testimony, appellee stated that Ms. Kohut was a member of his mixed bowling team and that the team often went out, as a group, after bowling. Appellee admitted kissing Ms. Kohut at two Christmas parties in 1973 and 1974, and holding her hand both in public and in private. He denied ever embracing her, going out on a date with her or having sexual intercourse with her. Appellee also admitted picking up Ms. Kohut at her place of employment three or four times subsequent to December 1, 1974. When asked to give a reason for this, appellant stated "I can't answer that question."

In the second hearing before the master, the testimony of appellee's mother, Mrs. Florence DeBias, and one other witness for appellee was taken. Mrs. DeBias supported her son's allegations, but her testimony was so nonspecific as to dates and details as to be of little value. The other witness was unable to offer anything of relevance.

The master based his recommendation to dismiss the complaint in divorce on the following conclusions: (1) that appellant's conduct was the foreseeable result of appellee's provocation; (2) that the indignities suffered by the appellee were not excessive retaliation; (3) that the appellee, having provoked the indignities he complained of, was not the injured and innocent spouse; and (4)

272

that the facts as testified to by the witnesses were not sufficient to allow appellee a divorce on the grounds of indignities.

[1, 2]   It is the duty of this court, on appeal, to make an independent evaluation of the record and to determine if a legal cause of action for divorce exists. *Steinke v. Steinke*, 238 Pa.Super. 74, 357 A.2d 674 (1975); *Dougherty v. Dougherty*, 235 Pa.Super 122, 339 A.2d 81 (1975). On the other hand, while the findings and recommendation of the master are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witnesses, his findings should be given the fullest consideration. *Schrock v. Schrock*, 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975).

The issue before us is whether appellee has established, on the record, that appellant is guilty of such indignities to his person as to render his condition intolerable and his life burdensome. In this regard, our Supreme Court has stated "Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement: (citations omitted)." *McKrell v. McKrell*, 352 Pa. 173, 180, 42 A.2d 609, 612 (1945), *quoting Martin v. Martin*, 154 Pa.Super. 313, 317, 35 A.2d 546, 548 (1944). The court further emphasized that, although such indignities cannot be specifically defined, their essential characteristic is that ". . . they must consist of such a course of conduct as is humiliating, degrading and inconsistent with the position and relation as a spouse." *McKrell v. McKrell, supra*, 352 Pa. at 180, 42 A.2d at 612.

█  It is clear that appellee's allegations, if accepted as true, could establish a case of indignities under the law. In *Yohey v. Yohey*, 205 Pa.Super. 329, 333, 208 A.

2d 902, 904 (1965), this court held that "[t]he conduct of the defendant in constantly calling her husband vile and abusive names falls within the definition of indignities as so often laid down by our courts . . .." It also indicated that "continuous unfounded accusations of infidelity, when accompanied by other degrading or humiliating conduct, are sufficient to make out a case of indignities to the person. *Politylo v. Politylo,* 173 Pa.Super. 223, 95 A.2d 241." *Id.* at 334, 208 A.2d at 904, 905.

In the instant case, however, appellant contends that her accusations of infidelity were based on reasonable suspicion, and that her vituperation and other abusive conduct toward appellee was provoked by his behavior. The court in *Blose v. Blose,* 163 Pa.Super. 322, 325, 61 A.2d 370, 372 (1948), held that "where . . . the accused spouse so conducts himself with other women that the wife has reason to be suspicious, her accusations furnish no support, to a charge of indignities to the person." *Accord, Parcella v. Parcella,* 165 Pa.Super. 218, 67 A.2d 576 (1949). In *Blose, supra,* the court also stated that "if libellant provoked the name-calling, or it occurred in the midst of quarrels participated in by both parties, it is in no wise a proper instance of indignities on the part of respondent." 163 Pa.Super. at 326, 61 A.2d at 372, *quoting Viney v. Viney,* 151 Pa.Super. 86, 89, 29 A.2d 437, 438 (1942).

▮ Appellant explained, in her testimony before the master, her reasons for doubting her husband's fidelity, including, *inter alia* his frequent late hours, strange lipstick and makeup on his clothes, and his rejection of her affections. Appellant's witness corroborated her testimony in regard to the dearth of appellee's presence in the marital home, and also attested to several incidents connecting appellee with a particular "other woman." We cannot say, on the record before us, that appellant's suspicions were unwarranted. "To amount to indignities justifying a divorce, the charge of infidelity made by the

274

defendant not only must be false, but must have been without reasonable ground for believing it to be true." *Hurley v. Hurley,* 180 Pa.Super. 364, 371, 119 A.2d 634, 637 (1956). The master found that the disposition of this case rested on credibility, a determination which he made in favor of appellant. We agree that credibility is the dispositive factor. The master, having heard the testimony and observed the witnesses, is clearly in the best position to weigh this particular variable. *E. g., Schrock v. Schrock, supra.*

Finally, we agree with the master that appellant's conduct toward appellee, while far from laudable, did not rise to the level of excessive retaliation, and therefore did not constitute indignities in that respect. *See Parcella v. Parcella, supra.* Appellee has failed to establish ". . . his charge of indignities to the person by clear and satisfactory evidence." *Blose v. Blose, supra,* 163 Pa.Super. at 327, 61 A.2d at 372.

The order of the court below is reversed, and appellee's complaint in divorce is dismissed.

WATKINS, President Judge, dissents.