385 A.2d 378

**William R. McCASKEY, Jr., Appellee,**

**v.**

**Patricia J. McCASKEY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 23, 1977.

Decided. April 13, 1978.

362

John Edward Wall, Pittsburgh, for appellant.

G. Entenmann, Pittsburgh, with him William J. Murray, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in dismissing her exceptions to the master's report and in entering a decree of divorce a.v.m.[1] We affirm the lower court's decree.

On December 27, 1947, appellant-wife and appellee-husband were married in Pittsburgh, Pennsylvania. They have five children, ranging in age at the time of the hearing from 14 to 26. On October 10, 1975, appellee filed a complaint in divorce a.v.m. on the grounds of indignities to the person. The lower court appointed a master who conducted hearings on March 30, 1976, and on April 7, 1976. Appellee testified as follows: appellant consumed straight gin until her speech became slurred while with appellee and his business associates. Without provocation, appellant struck and insulted an employer of appellee. Appellant telephoned the wives of two of appellee's business associates, told them that appellee

1. Divorce Law, Act of May 2, 1929, P.L. 1237, § 10; as amended Act of March 19, 1943, P.L. 21, § 1; 23 P.S. § 10, as amended. Act of September 22, 1972, P.L. 880, No. 202, § 1.

was a homosexual and intimated that he was currently involved in a homosexual affair with an employee of her husband's firm.[2] This conduct embarrassed and humiliated appellee. Appellee also testified that appellant consumed large quantities of alcohol in the family room of the home until she became unconscious; she refused to clean the home or to prepare his breakfast; and, except on infrequent occasions, appellant refused to engage in sexual intercourse. Appellant regularly abused appellee verbally in front of their children and friends by calling him a drunkard, homosexual, no damn good, an inadequate provider, and an adulterer. Appellant's conduct made appellee nervous and upset and his doctor prescribed librium tablets for him.

Appellee admitted that during a very emotionally stressful period 12 years earlier, he had engaged in a homosexual incident with his then 12 year old son, Bill, Jr. Both appellee and his son received psychiatric care after the event and the family remained together and worked out the problem. Bill, Jr. has forgiven his father. Following the parties' separation in February, 1974, appellee attempted a reconciliation but appellant's excessive drinking prevented a reunion.

Appellee called Cherry Greenberg,[3] the wife of one of appellee's co-workers, who corroborated appellee's testimony. She confirmed that appellant telephoned her to say that appellee is a homosexual. Appellee's sons both testified; appellee called Bill, Jr. and appellant called David. Both stated that appellant called appellee a homosexual in their presence and that appellant frequently became inebriated at home and slept in the family room.

Appellant presented a different version of the events of the marriage. She denied ever insulting appellee while with

2. Appellant admitted calling Jenny Croneworth whose husband, Bill, worked with appellee. Ms. Croneworth's husband was dead at the time of the hearing.

3. The witness gave her name as Cherry Greenberg, however the master referred to her as Sherry Greenberg. Ms. Greenberg stated that her stage name is Teri Renee and she is also referred to as Teri in the transcript at time.

friends or business associates. She denied that she slept in the family room after passing out from drinking; instead, she asserted that appellee sometimes locked her out of the master bedroom. Appellant stated that she prepared breakfast for appellee, cleaned the house regularly, and entertained appellee's business guests. Appellant stated that she did not have a drinking problem and that she did not become intoxicated in front of appellee's business associates. Appellant accused appellee of insulting and belittling her in front of their friends. Appellant stated that her son Bill informed her about appellee's homosexual advances and that she was shocked and deeply hurt by the incident. She indicated that they were able to work through the problem and resolve the difficulty.

Appellant admitted calling appellee a homosexual and a drunkard in front of the children, accusing appellee of infidelity, and calling Ms. Greenberg and another wife of a business associate to discuss appellee's homosexual tendencies. She denied calling appellee's business associates.

The master concluded that appellee had proved a case of indignities to the person and therefore recommended that the court grant a divorce.[4] On March 17, 1977, the court, en banc, dismissed appellant's exceptions to the master's report and entered a decree of divorce a.v.m. This appeal followed.

Appellant first contends that the lower court erred in approving the master's finding that she demonstrated settled hate and estrangement toward appellee. More specifically, she alleges that the court and master erroneously relied upon appellant's post-separation conversation with Ms. Greenberg to establish the element of settled hate and estrangement.

We recently reiterated the legal guidelines controlling our review of this contention:

"The law is clear that when a divorce matter is heard by a judge sitting without a jury, this Court must make a complete and independent review of the record of the proceedings below. *Eifert v. Eifert*, 219 Pa.Super. 373, 281

4. The master filed a comprehensive 36 page recommendation.

A.2d 657 (1971). The Court's review extends even to matters of credibility. *Del Vecchio v. Del Vecchio,* 169 Pa.Super. 617, 84 A.2d 261 (1951). The Court must 'examin[e] the record to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods . . . .' 12 P.L.E. § 143 Divorce; see also, *Faszczewski v. Faszczewski,* 182 Pa.Super. 295, 126 A.2d 773 (1956); *Rankin v. Rankin,* 181 Pa.Super. 414, 124 A.2d 639 (1956)." *Ryave v. Ryave,* 249 Pa.Super. 78, 85, 375 A.2d 766, 770 (1977); *Barton v. Barton,* 248 Pa.Super. 278, 375 A.2d 96 (1977); *Shacreaw v. Shacreaw,* 248 Pa.Super. 223, 375 A.2d 68 (1977). However, we have frequently stated: "while the findings and recommendation of the master are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witnesses, his findings should be given the fullest consideration. *Schrock v. Schrock,* 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gehris v. Gehris,* 233 Pa.Super. 144, 334 A.2d 753 (1975)." *DeBias v. DeBias,* 245 Pa.Super. 266, 272, 369 A.2d 396, 399 (1976). Section 10(f) of the Pennsylvania Divorce Law, supra, provides *inter alia* that: ". . . [I]t shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, . . . that the other spouse: . . . [s]hall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome." "While our appellate courts have been reluctant to formulate a general definition of what constitutes 'indignities,' we have noted that indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, or malignant ridicule. *Gehris v. Gehris,* supra, 233 Pa.Super. at 147–48, 334 A.2d at 754–755. See also *McKrell v. McKrell,* 352 Pa. 173, 42 A.2d 609 (1945)." *Hargrove v. Hargrove,* 252 Pa.Super. 120, 129–130, 381 A.2d 143, 148 (1977). Moreover, "It has thus generally been determined that such conduct must constitute a course of behavior which is humiliating and degrading, inconsistent with the injured individual's position

as a [spouse] making that condition intolerable and life a burden to [him or] her. A single act of indignity is not sufficient, but a course of treatment 'of such character as to render the condition of any [person] of *ordinary sensibility* and *delicacy of feeling* intolerable and . . . life burdensome will' present grounds for divorce. *Commonwealth ex rel. Whitney v. Whitney*, 160 Pa.Super. 224, 228, 50 A.2d 732, 734 (1947) (emphasis original). Such conduct is understood to manifest the spirit of malevolence, hate and estrangement which has come to replace natural love and affection in a marriage and is central to a charge of indignities. *Barr v. Barr*, supra, [232 Pa.Super. 9, 331 A.2d 774]; *Sells v. Sells*, 228 Pa.Super. 331, 323 A.2d 20, supra. *Steinke v. Steinke*, 238 Pa.Super. 74, 78, 357 A.2d 674, 676 (1975). See also *Schrock v. Schrock*, 241 Pa.Super. 53, 359 A.2d 435 (1976)." *Ryave*, supra, 249 Pa.Super. at 87, 375 A.2d at 771.

█ In the instant case, appellant repeatedly insulted and humiliated appellee in the presence of his business associates and their family. She initiated arguments while in public, she belittled him and his earning capacity in the presence of business associates. Appellant constantly accused appellee of being a drunkard, a homosexual and an adulterer in the presence of their children. Moreover, appellant admitted calling the wives of two of her husband's business associates, informing them of her husband's homosexual act and intimating a similar current proclivity on his part. Appellee's testimony was corroborated by the clear and concise testimony of Ms. Greenberg, as well as that of his sons, David and Bill. We believe, as did the master and the lower court, that the constant insults, provocations, and humiliations of appellee constitute a course of conduct which rendered appellee's condition intolerable and his life burdensome.

█ Neither the master nor the lower court relied upon appellant's phone calls to Ms. Greenberg as direct proof of indignities. Both accepted the conversation as evidence which shed light upon the behavior of the parties prior to the separation. See *Hargrove v. Hargrove*, supra; and *Boyer v. Boyer*, 163 Pa.Super. 520, 63 A.2d 495 (1957). We find the use of such testimony acceptable when admitted for

such a limited purpose. Accordingly, the lower court correctly upheld the master in finding that appellee had presented sufficient evidence of indignities and that settled hate and estrangement had replaced the love in this marriage.

Appellant next argues that the lower court erred in finding that appellant's accusations of infidelity were unfounded. On direct examination appellant acknowledged that she accused appellee of being unfaithful when she discovered a condom in his shirt pocket when he returned from a business trip. In 1973, appellant accused appellee of infidelity when he stated that he was interested in another woman. Appellee steadfastly denied giving appellant any reason to suspect him of infidelity and maintained that he never engaged in a relationship with another woman during the course of their marriage. Appellee did admit that he may have kissed a waitress while entertaining customers. Pennsylvania courts have indicated that: " 'continuous unfounded accusations of infidelity, when accompanied by other degrading or humiliating conduct, are sufficient to make out a case of indignities to the person. *Politylo v. Politylo*, 173 Pa.Super. 223, 95 A.2d 241'. *Yohey v. Yohey*, 205 Pa.Super. 329, 334, 208 A.2d at 904, 905." *DeBias*, supra, 245 Pa.Super. at 273, 369 A.2d at 399. However, we have also held that: " 'where . . . the accused spouse so conducts himself with other women that the wife has reason to be suspicious, her accusations furnish no support, to a charge of indignities to the person.' *Blose v. Blose*, 163 Pa.Super. 322, 325, 61 A.2d 370. *Accord Parcella v. Parcella*, 165 Pa.Super 218, 67 A.2d 576 (1949)." *DeBias*, supra, 245 Pa.Super. at 273, 369 A.2d at 399.

In *DeBias*, we found that whether appellant's accusations of infidelity were unfounded rested on the credibility of the witnesses, a determination most properly made by the master, who, having heard the testimony and observed the witnesses, is clearly in the best position to determine this issue. The master in the instant case credited appellee's testimony and found that appellant's accusations were unfounded. We affirm this finding of credibility.

368

 Finally, appellant contends that appellee is not an innocent and injured spouse as required by § 10(1)(f) of the Pennsylvania Divorce Law, supra. Particularly, she asserts that appellee's insulting behavior towards appellant plus his admitted homosexual conduct with their oldest son preclude a finding that he is innocent and injured.

Pennsylvania case law establishes "the principle that the requirements of innocence and injury do not mean that the plaintiff need be wholly free from fault. . . . We have consistently held that a party should not be denied a divorce merely because he or she is not entirely without fault." *Ryave*, supra, 249 Pa.Super. at 84, 375 A.2d at 769; *Faszczewski v. Faszczewski*, 182 Pa.Super. 295, 126 A.2d 773 (1956); *Green v. Green*, 182 Pa.Super. 287, 126 A.2d 477 (1956).

The lower court adequately dealt with appellee's insults to his wife by stating: "It is clear that [appellee], is an outgoing man whose demeanor is normally boisterous, loud and, at times, crude. It is also evident that he frequently argued with his wife, privately and in public. The Master's finding that, in the course of these arguments, both parties provoked one another and both retaliated in kind is well supported by the evidence. However, the evidence also establishes a pattern of insult and provocation on the part of the [appellant] as the usual instigation for these altercations. Even if this were not so, the malicious and humiliating epithets habitually used by [appellant] when angered are, as the Master found, unjustified and excessive even as retaliation to her husband's provocations, particularly when employed in front of the children or plaintiff's business associates. Although [appellee] frequently lost his temper with his wife, there is nothing in his behavior as reported on the record which merits the treatment he received from her. He was not the initiating irritant, in this regard at least, and the indiscretions he did commit were far overshadowed by those of the [appellant]." We agree with this analysis completely.

 As for appellant's contention that a homosexual act upon their son will now bar appellee's action for divorce, we have stated: "In an action for divorce . . . , mis-

treatment of a spouse's child has been held to constitute indignities directed to the person of the parent and thus may support a divorce decree." *Crissman v. Crissman*, 220 Pa.Super. 387, 389, 281 A.2d 719, 721 (1971), 2 Freedman, Law of Marriage and Divorce in Pennsylvania, § 338 (2d Ed., 1957). We agree that if a spouse abuses the parties' children, the court may find that spouse is not the innocent and injured party. Such a finding depends upon the facts and circumstances of each particular case, including the severity and regularity of any abuse which may have occurred. However, in the instant case, we believe that appellee proved innocence and injury. The homosexual incident occurred in 1965 and it was never repeated. Both father and son sought psychiatric help. Appellee testified that he was undergoing an emotional crisis at the time which has never recurred. Appellant forgave appellee and worked out the problem to her satisfaction. The son forgave appellee and now has a good relationship with his father. We refuse to find that one isolated incident which occurred many years ago rises to conduct which precludes a finding that appellee is innocent and injured. Accordingly, we affirm the order of the lower court which granted a divorce a.v.m.

Order affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.