<hr />

395 A.2d 1333

**Janet Irene LEUCCI, Appellant,**

v.

**Gino LEUCCI.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Decided Dec. 14, 1978.

C. Dean Francis, Philadelphia, for appellant.

Richard S. Mailman, Jenkintown, for appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in sustaining appellee's exceptions to the master's report and in dismissing her complaint in divorce a. v. m.[1] Because we agree, we reverse the lower court's order and direct the entry of a decree of divorce a. v. m.[2]

On September 9, 1959, appellant-wife and appellee-husband were married in Philadelphia, Pennsylvania. They have two daughters, aged 12 and 16 years at the time of the hearing. On March 5, 1976, appellant filed a complaint in divorce a. v. m. on the ground of indignities to the person. The lower court appointed a master who conducted hearings on November 10 and December 14, 1976. After hearing the testimony of the two parties, who were the only witnesses, the master made the following findings of fact. Almost from the beginning of the marriage, appellee isolated appellant from her personal friends and relatives, claiming that he wished to have only native Italians as friends. Throughout the marriage, appellee accused appellant, without cause, of looking at and dating other men. Without cause, appellee accused her of having an affair with her priest and her obstetrician and questioned the paternity of his younger daughter. Appellant admittedly had a single brief affair with another man in 1961. Eight years later, in 1969, she suffered a nervous breakdown and admitted the affair to her husband. Throughout the period from 1969, when ap-

---

1. The Divorce Law, May 2, 1929, P.L. 1237, § 10; as amended Act of March 19, 1943, P.L. 21, § 1; 23 P.S. § 10, as amended, Act of Sept. 22, 1972, P.L. 880, No. 202, § 10.

2. Appellant also asks us to reverse the lower court's September 9, 1976 order for alimony pendente lite of $35 per week because it is grossly inequitable. Although appellant filed exceptions to the lower court's order on September 22, 1976, she never filed a notice of appeal of that order. Pa.R.App.P. 902, 903. We have held that an allowance of alimony pendente lite is a final appealable order. *Henderson v. Henderson*, 458 Pa. 97, 327 A.2d 60 (1974); *Brady v. Brady*, 168 Pa.Super. 538, 79 A.2d 803 (1951). Accordingly, this issue is not properly before us.

pellant admitted the old affair, to July 1975, when she left the marital home, appellee argued with her about the affair at least once a week, calling her tramp and refusing to communicate with her at all for days at a time. After appellant confessed her brief affair, appellee removed his wedding ring and refused to wear it thereafter. The master found that appellant's testimony was credible and was not "shaken" by appellee's testimony; on the contrary, the master found that appellee's testimony either corroborated or did not contradict most of appellant's testimony.

The master concluded that appellant had proved a case of indignities to the person and, therefore, recommended that the court grant a divorce. On December 16, 1977, the lower court sustained appellee's exceptions and dismissed the complaint. This appeal followed.

Appellant first contends that the lower court erred when it found that she did not prove indignities by clear and convincing evidence.

In *McCaskey v. McCaskey*, 253 Pa.Super. 360, 364–365, 385 A.2d 378, 380 (1978), we outlined the well-settled guidelines for our review of non-jury divorce cases:

" 'The law is clear that when a divorce matter is heard by a judge sitting without a jury, this Court must make a complete and independent review of the record of the proceedings below. *Eifert v. Eifert*, 219 Pa.Super. 373, 281 A.2d 657 (1971). The Court's review extends even to matters of credibility. *Del Vecchio v. Del Vecchio*, 169 Pa.Super. 617, 84 A.2d 261 (1951). The Court must "examin[e] the record to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods . . . ." 12 P.L.E. § 143 Divorce; see also, *Faszczewski v. Faszczewski*, 182 Pa.Super. 295, 126 A.2d 773 (1956); *Rankin v. Rankin*, 181 Pa.Super. 414, 124 A.2d 639 (1956).' *Ryave v. Ryave*, 249 Pa.Super. 78, 85, 375 A.2d 766, 770 (1977); *Barton v. Barton*, 248 Pa.Super. 278, 375 A.2d 96 (1977); *Shacreaw v. Shacreaw*, 248 Pa.Super. 223, 375 A.2d 68 (1977). However, we have frequently stated: 'while the findings and recommendation of the master are only adviso-

ry, where the issue is one of credibility and the master is the one who heard and observed the witnesses, his findings should be given the fullest consideration. *Schrock v. Schrock*, 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975).' *DeBias v. DeBias*, 245 Pa.Super. 266, 272, 369 A.2d 396, 399 (1976). Section 10(f) of the Pennsylvania Divorce Law, supra, provides *inter alia* that: '. . . [I]t shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse: . . . [s]hall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome.' 'While our appellate courts have been reluctant to formulate a general definition of what constitutes "indignities", we have noted that indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, or malignant ridicule. *Gehris v. Gehris*, supra, 233 Pa.Super. at 147–48, 334 A.2d at 754–755. See also *McKrell v. McKrell*, 352 Pa. 173, 42 A.2d 609 (1945).' *Hargrove v. Hargrove*, 252 Pa.Super. 120, 381 A.2d 143 (1977). Moreover, 'It has thus generally been determined that such conduct must constitute a course of behavior which is humiliating and degrading, inconsistent with the injured individuals' position as a [spouse] making that condition intolerable and life a burden to [him or] her. A single act of indignity is not sufficient, but a course of treatment "of such character as to render the condition of any [person] of *ordinary sensibility* and *delicacy of feeling* intolerable and . . . life burdensome will" present grounds for divorce. *Commonwealth ex rel. Whitney v. Whitney*, 160 Pa.Super. 224, 228, 50 A.2d 732, 734 (1947) (emphasis original). Such conduct is understood to manifest the spirit of malevolence, hate and estrangement which has come to replace natural love and affection in a marriage and is central to a charge of indignities. *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774; *Sells v. Sells*, supra. *Steinke v. Steinke*, 238 Pa.Super. 74, 78, 357 A.2d 674, 676 (1975). See also *Schrock v. Schrock*, 241 Pa.Super. 53, 359

A.2d 435 (1976).' *Ryave, supra*, 249 Pa.Super. at 87, 375 A.2d at 771." *See Bristol v. Bayani*, 259 Pa.Super. 418, 393 A.2d 897 (1978); *Peter v. Peter*, 208 Pa.Super. 221, 222 A.2d 511 (1966); *Gerenbeck v. Gerenbeck*, 199 Pa.Super. 410, 186 A.2d 49 (1962).

 The instant case amounts to a swearing contest between the parties. Therefore, the lower court should have accorded great weight to the master's credibility findings. Our independent review of the record supports the master's findings as to the weight and credibility to be given appellant's testimony. Moreover, we believe that appellant introduced sufficient credible evidence to sustain a finding of indignities. Appellee isolated appellant from her friends. He constantly accused her of looking at other men although appellant's credible testimony revealed that, but for one brief affair, she gave appellee no cause to think she was unfaithful. After appellant confessed to her husband that she had had a brief affair eight years earlier, he continually berated and argued with her about the incident, called her a tramp, and refused to wear his wedding ring. After enduring this for six years, appellant left the marital home. Based on our review of the record, we hold that appellee's course of conduct was sufficient to establish indignities.

Appellant also contends that the lower court erred when it found that she was not an innocent and injured spouse. In *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974), we held that a husband was an innocent and injured spouse although he admitted having an extra-marital relationship. "This affair, however, was followed by eight years of cohabitation with appellant without repetition of the transgression. To be an innocent and injured spouse, a plaintiff need not be blameless. *Gray v. Gray*, 220 Pa.Super. 143, 286 A.2d 684 (1971); *Margolis v. Margolis*, 201 Pa.Super. 129, 192 A.2d 228 (1963); *Shoemaker v. Shoemaker*, 199 Pa.Super. 61, 184 A.2d 282 (1962); *King v. King*, 198 Pa.Super. 336, 181 A.2d 694 (1962). Appellant knew about her husband's transgression, accepted him back into the household, and continued to live with him as his wife for eight more years. In these circumstances the evidence of infidelity was insufficient to show

that the husband was not an innocent and injured spouse. *See Gray v. Gray, supra,* 220 Pa.Super. at 146–47, 286 A.2d at 686–87." (footnote omitted). *Id.,* 232 Pa.Super. at 13, 331 A.2d at 776.

In the instant case, appellant had a brief affair in 1961 but never repeated the incident or gave her husband any cause to doubt her subsequent fidelity. After appellee learned of the affair, he continued to live with appellant as her husband for six more years. Under these circumstances, "we refuse to find that one isolated incident which occurred many years ago rises to conduct which precludes a finding that appellee is innocent and injured." *McCaskey, supra,* 253 Pa.Super. at 369, 385 A.2d at 383. Accordingly, we hold that the lower court erred when it sustained appellee's exceptions to the master's report.

The order of the lower court is reversed, and the court below is directed to enter a decree granting the divorce.